**Donald J. WOODS, Plaintiff,**

v.

**Nancy WHITE and Sidney Smith, Defendants.**

**No. 86–C–701–C.**

United States District Court, W.D. Wisconsin.

July 27, 1988.

Donald J. Woods, Portage, Wis., for plaintiff.

David E. Hoel, Asst. Atty. Gen., Madison, Wis., for defendants.

CRABB, Chief Judge.

In this civil case brought pursuant to 42 U.S.C. § 1983, plaintiff alleges that he is an inmate of the Waupun Correctional Institution, that defendants are medical service personnel at the institution's Health Service Unit, and that at some time in 1986 defendants discussed with non-medical staff and with other inmates the fact that plaintiff had tested positive for the AIDS

virus. Plaintiff contends that these actions violated his constitutional right to privacy.

Defendants have moved for judgment on the pleadings, contending that they are entitled to immunity from any judgment for damages, because they would not have known in 1986 that plaintiff had a constitutional right to privacy in his medical records.

For the reasons that follow, I will deny defendants' motion for judgment on the pleadings, because I conclude that there is a constitutional right to privacy in one's medical records and in the doctor-patient relationship; that this right is not relinquished automatically when a person is incarcerated as the result of a criminal conviction; that, although the right may have to give way to other important interests of society, the allegations of plaintiff's complaint do not suggest that defendants' discussion of his medical tests was undertaken in response to any important social interest; that the right to keep one's medical records protected from unnecessary and unwarranted dissemination was recognized in the law since before 1986; and that, even if the right could not be said to have been recognized prior to 1986, defendants are not entitled to claim the defense of qualified immunity, because the alleged acts of unjustified discussion of plaintiff's medical condition are not the kinds of acts to which the defense applies.

■ Any discussion of privacy rights involves two determinations: whether a constitutional right to privacy exists, and if so, the scope of that right. In *Plante v. Gonzalez*, 575 F.2d 1119, 1134 (5th Cir.1978), the court noted that the Supreme Court has given little specific guidance in defining privacy rights. Nevertheless, the starting point in determining the existence of a right to privacy is the Supreme Court's decision in *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), in which the Court upheld the constitutionality of a New York state law requiring the registration of the names and addresses of individuals who had doctors' prescriptions for certain categories of drugs. The plaintiffs in *Whalen* contended that the recordkeeping requirements violated the doctor-patient relationship that is one of the zones of privacy accorded constitutional protection.

The Court recognized that the language of several of its earlier decisions provided support for the idea of a constitutional right to privacy. *Whalen* at 598–599, 97 S.Ct. at 875–876. It identified two different kinds of privacy interests: the "interest in independence in making certain kinds of important decisions," *id.* at 599–600, 97 S.Ct. at 876, and the interest "in avoiding disclosure of personal matters," *id.* at 599, 97 S.Ct. at 876. However, the Court did not hold expressly that such interests are entitled to constitutional protection. It declined also to decide whether the "unwarranted disclosure" of personal information such as medical records would constitute a violation of the right to privacy, in light of its finding that the New York law evidenced a proper concern for the protection of the individual's interest in privacy. *Id.* at 605–606, 97 S.Ct. at 879.

In a case decided shortly after *Whalen*, *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed. 2d 867 (1977), the Court cited *Whalen* in finding that ex-president Nixon had a legitimate expectation of privacy in private communications between himself and his family, his physician, or his minister. Recognizing that "public officials, including the President, are not wholly without constitutionally protected privacy rights in matters of personal life unrelated to any acts done by them in their public capacity," *id.* at 457, 97 S.Ct. at 2797, the Court held that the interest of the public in presidential papers and the procedures for screening the papers to separate public from personal matters outweighed any intrusion on president Nixon's privacy rights.

Despite the fact that neither *Whalen* nor *Nixon* holds expressly that there is a constitutionally protected right to privacy in medical records or any other kind of personal information, *see Whalen v. Roe*, 429 U.S. at 605–606, 97 S.Ct. at 879–880, *Whalen* in particular has been read as standing for the proposition that such a right exists. *See, e.g., Kimberlin v. United States De-*

*partment of Justice,* 788 F.2d 434, 438 (7th Cir.1986) ("The Supreme Court, in *Whalen v. Roe,* recognized a constitutional interest in avoiding disclosure of personal matters.") (citations omitted); *Fadjo v. Coon,* 633 F.2d 1172, 1176 (5th Cir.1981); *United States v. Westinghouse Electric Corp.,* 638 F.2d 570, 577 (3rd Cir.1980); *Plante v. Gonzalez,* 575 F.2d 1119, 1134 (5th Cir. 1978) ("The Supreme Court has clearly recognized that the privacy of one's personal affairs is protected by the Constitution."); *Borucki v. Ryan,* 658 F.Supp. 325, 330 (D.Mass.1986). In short, since *Whalen,* there has been a consensus among most courts that a right to privacy exists in certain types of personal information. *See Borucki v. Ryan,* 827 F.2d 836, 846 (1st Cir.1987) (as of 1983, "a majority of courts considering the question [of a right to privacy] had concluded that a constitutional right of confidentiality is implicated by disclosure of a broad range of personal information. . . .")

■ The more difficult question is the extent of the right to privacy in personal information. Courts have defined the scope of privacy rights on a case-by-case method, balancing the individual's right to confidentiality against the governmental interest in limited disclosure. *See, e.g., Plante v. Gonzalez,* 575 F.2d at 1134 (adopting the balancing standard in case challenging Florida's financial disclosure law for public officials). In *United States v. Westinghouse Electric Corp.,* 638 F.2d 570, the Court of Appeals for the Third Circuit found that there was "no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection." *Id.* at 577. It noted that information about one's body and state of health is particularly sensitive, and that such information has traditionally been treated differently from other types of personal information. *Id.* The court stressed that the employee medical records with which it was concerned

contained more extensive information than the records at issue in *Whalen. Id.* Nevertheless, the court found that the federal government's interest in monitoring health hazards in the workplace outweighed the intrusion on employees' right to confidentiality. It suggested, however, that the government give prior notice to the employees whose medical records it sought to examine and that it permit employees to raise a personal claim of privacy. *Id.* at 581.

Given the most publicized aspect of the AIDS disease, namely that it is related more closely than most diseases to sexual activity and intravenous drug use, it is difficult to argue that information about this disease is not information of the most personal kind, or that an individual would not have an interest in protecting against the dissemination of such information. *See* Note, The Constitutional Rights of AIDS Carriers, 99 Harv.L.Rev. 1274, 1287–1288 (1986) (noting possible serious consequences of mandatory AIDS testing, including possibility that public reporting requirements may discourage some individuals from seeking tests).[1] I find that plaintiff has a constitutional right to privacy in his medical records.

In this case, it is not necessary to balance plaintiff's right to nondisclosure of his medical records against a countervailing governmental interest. Defendants make no claim that any important public interest was served in their discussion of plaintiff's positive test for the AIDS virus. Thus, although there might be instances in which such interests would limit the scope of plaintiff's right to privacy, there is no need to define that right more narrowly here.

■ Plaintiff retains his right to privacy, although he is incarcerated. The right to privacy is not terminated by conviction for a crime. Despite the many invasions of that right that are inherent in the fact of incarceration, or even of probation, convicted persons retain "some constitutional right to privacy." *Torres v. Wisconsin*

---

**1.** Additionally, I note that public disclosure of test results for the AIDS virus may implicate the other aspect of the right to privacy mentioned in *Whalen:* the right of autonomy in making certain fundamental decisions pertaining to such matters as family, procreation, and medical treatment.

*Department of Health & Social Services,* 838 F.2d 944, 951 (7th Cir.1988) (holding that female inmates' constitutional right to privacy did not conflict with employment rights of male correctional officers, given the procedures already in place and available to protect the inmates' privacy interests); *Kimberlin v. United States Department of Justice,* 788 F.2d at 439 n. 6.

■ Citing *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), defendants claim that they are entitled to a defense of qualified immunity. In *Harlow,* the Supreme Court reiterated its position that government officers "are entitled to some form of immunity from suits for damages ... public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability." *Id.* at 806, 102 S.Ct. at 2732. Although the Court's decisions have been concerned with the potential liability of high government officials, *see, e.g., Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (high federal officials of the Executive branch); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (high state officials); *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (President of the United States); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (presidential aides), the lower federal courts have extended the defense to government employees at any level whose duties require them to exercise discretion. The Court has carved out a qualified immunity for government officials whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

Defendants have focused their argument in favor of qualified immunity on the question whether a reasonable person would have known in February 1986 that plaintiff had an expectation of privacy in his medical records. I think it would have been clear to a competent public official in 1986 that individuals had a constitutional right to privacy in information relating to AIDS. However, defendants' argument assumes that the conduct in question was part of

their discretionary functions. *See Harlow* at 816, 102 S.Ct. at 2737 ("Immunity generally is available only to officials performing discretionary functions.") Implicit in the Court's definition of qualified immunity is the requirement that the conduct for which immunity is claimed fall within the official's sphere of responsibility.

Casual, unjustified dissemination of confidential medical information to non-medical staff and other prisoners can scarcely be said to belong to the sphere of defendants' discretionary functions. Therefore, the defense of qualified immunity is not available to defendants. *See Forrester v. White,* —— U.S. ——, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988) ("Officials who seek exemption from personal liability have the burden of showing that such an exemption is justified by overriding considerations of public policy....")

### ORDER

IT IS ORDERED that defendants' motion for judgment on the pleadings is DENIED.