THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. C.S., Defendant-Appellant.

Second District No. 2—89—0644

Opinion filed December 31, 1991.

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

The defendant, C.S., appeals from the trial court's orders: (1) that she undergo a blood test for human immunodeficiency virus (HIV) and (2) disclosing the positive test results. We affirm the court's order, as modified.

The defendant pleaded guilty to unauthorized possession of a hypodermic needle or syringe (Ill. Rev. Stat. 1989, ch. 38, par. 22—50) and was sentenced to 270 days in the county jail. Thereafter, pursuant to section 5—5—3(h) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(h)), the court ordered the defendant to submit to HIV testing. Section 5—5—3(h) mandates such testing for persons convicted of unauthorized possession of a hypodermic needle or syringe.

The defendant's HIV test results were positive, and the State moved for disclosure of the results. The court ordered the defendant to report for treatment information from public health officials. It also ordered that the defendant's test results be disclosed to all attorneys in the criminal division of the Winnebago County State's Attorney's office, to two persons at the Winnebago County jail, and to the Rockford city police supervisor of detectives.

In its order, the court found it necessary and in the public interest that law enforcement personnel be protected against physical harm in future contacts with the defendant and that both law enforcement personnel and lawyers in the State's Attorney's office be informed of facts sufficient to initiate or institute proper criminal charges in future contacts with the defendant. The court also found it was in the defendant's privacy interest that police disclosure be made only to one specific supervisor.

The defendant appealed and was granted stay of the disclosure order, pending appeal. On appeal, the defendant challenges the constitutionality of the section 5—5—3(h) requirement that she be tested for

HIV or any other causative agent of acquired immunodeficiency syndrome (AIDS). She also argues that, even if she was constitutionally tested for HIV, the court's disclosure order was an abuse of discretion. We first address the constitutionality of section 5—5—3(h).

■ Section 5—5—3(h) provides as follows:

"(h) Whenever a defendant is convicted of an offense under Section 1 or 2 of 'An Act to regulate the possession, delivery, sale or exchange of hypodermic syringes, hypodermic needles, and similar instruments,' *** the defendant shall undergo medical testing to determine whether the defendant has been exposed to *** (HIV) or any other identified causative agent of *** (AIDS). Except as otherwise provided by law, the results of such test shall be kept strictly confidential by all medical personnel involved in the testing and must be personally delivered in a sealed envelope to the judge of the court in which the conviction was entered for the judge's inspection in camera. Acting in accordance with the best interests of the public, the judge shall have the discretion to determine to whom, if anyone, the results of the testing may be revealed." Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(h).

The "section 1" offense to which section 5—5—3(h) refers is the offense of which the defendant was convicted. It is defined as follows:

"§1. *No person, not being a* physician, dentist, chiropodist or veterinarian licensed under the laws of this State or of the state where he resides, or a registered professional nurse, or a registered embalmer, manufacturer or dealer in embalming supplies, wholesale druggist, manufacturing pharmacist, registered pharmacist, manufacturer of surgical instruments, industrial user, official of any government having possession of the articles hereinafter mentioned by reason of his official duties, nurse or a medical laboratory technician acting under the direction of a physician or dentist, employee of an incorporated hospital acting under the direction of its superintendent or officer in immediate charge, or a carrier or messenger engaged in the transportation of such articles, or the holder of a [statutorily described prescription], or a farmer engaged in the use of such instruments on livestock, or a person engaged in chemical, clinical, pharmaceutical or other scientific research, *shall have in his possession a hypodermic syringe, hypodermic needle, or any instrument adapted for the use of controlled substances or cannabis by subcutaneous injection.*" (Emphasis added.) Ill. Rev. Stat. 1989, ch. 38, par. 22—50.

In her first argument, the defendant refers to the intrusive nature of the mandatory blood test here and to the sensitive privacy issues connected with the AIDS-related results. According to the defendant, the interest of promoting public health is not particularly furthered by this testing and disclosure law. In her argument, the defendant points to the fact that section 5—5—3(h) does not require that results be disclosed to the person tested and does not prescribe or authorize any treatment for an infected person. She also notes that the statute is situated amongst criminal, not public health, provisions.

Additionally, the defendant compares the provisions of section 5—5—3(h) to the testing requirements under the Illinois Sexually Transmissible Disease Control Act (Ill. Rev. Stat. 1989, ch. 111½, par. 7401 et seq.). That latter, public health statute allows involuntary AIDS testing only upon the presentation of a warrant showing exhaustion of less coercive means and real and present danger to public health. Ill. Rev. Stat. 1989, ch. 111½, par. 7406(c).

According to the defendant, the section 5—5—3(h) testing requirement is more akin to a police dragnet than to a scheme carefully tailored to reduce infringement of protected rights. She labels section 5—5—3(h) as a "standardless mandate." She notes that the court ordering her blood test had no evidence that she might be infectious, except that she had been convicted of illegal possession of hypodermic-injection items. She notes that there was no showing made or attempted that she had used the hypodermic devices that she was convicted of possessing, that she customarily used such devices, or that she was addicted to drugs that are customarily injected. Further, she notes that even if we assume that she was infectious, there was no showing here either of a real and present danger to the public health or that there were no less coercive alternatives to the testing. See Ill. Rev. Stat. 1989, ch. 111½, par. 7406(c).

■ Mandatory blood testing is a search and seizure that must comply with the United States Constitution's fourth amendment standards for reasonableness. (Schmerber v. California (1966), 384 U.S. 757, 767-68, 16 L. Ed. 2d 908, 918, 86 S. Ct. 1826, 1834.) A search's reasonableness is measured by balancing the nature and quality of the intrusion into the individual's fourth amendment interests against the importance of the governmental interest alleged to justify the intrusion. O'Connor v. Ortega (1987), 480 U.S. 709, 719, 94 L. Ed. 2d 714, 724, 107 S. Ct. 1492, 1498-99.

In its argument to support the mandatory testing here, the State notes the extent and significance of AIDS-related viruses today. It also notes generally understood information that those viruses are

most commonly spread through sexual contact but that the exchange of blood products, most commonly by needle-sharing drug users, is another common means of transmission.

Citing Flanders and Flanders' *Aids Library in a Book* (1991), the State observes that intravenous drug users are considered less likely than other risk groups to engage in safe sexual practices and that there exists concern that the disease they may contract may spread to the general population either sexually or through contaminated blood transfusions. According to the State, it cannot be denied that the people of Illinois have a vital interest in controlling the spread of AIDS and that section 5—5—3(h) is a well-reasoned response to the accelerating epidemic of HIV infection among intravenous drug users.

■ The defendant acknowledges that the State has an interest in promoting public health. However, she challenges making a connection between possessing drug-injection equipment and being in a high-risk group for AIDS contraction; in that vein, she challenges the related view that it would be a reasonable exercise of the State's police powers to AIDS test a person who had been shown to have possessed drug-injection equipment. We agree with the State's general position that the testing of individuals belonging to a high-risk group for contraction of AIDS viruses in the midst of the AIDS epidemic is a reasonable exercise of the State's police powers. (*Cf. Skinner v. Ry. Labor Executives' Association* (1989), 489 U.S. 602, 103 L. Ed. 2d 639, 109 S. Ct. 1402.) Further, given the documented connection between illegal intravenous drug use and the spread of HIV infection, we find that testing likely illegal intravenous drug users is that kind of reasonable exercise of State police power. See *Glover v. Eastern Nebraska Community Office of Retardation* (D. Neb. 1988), 686 F. Supp. 243, *aff'd* (8th Cir. 1989), 867 F.2d 461.

Further, given the particularity with which the defendant's "section 1" offense is defined, we find that mandating a test for persons convicted of the offense is equivalent to mandating a test for likely illegal intravenous drug users. The "section 1" prohibition on possession of devices adapted for drug injection has been carefully drafted to apply only to persons without legally recognized reason to possess those items closely connected with illegal intravenous drug use. We find that the connection is sufficiently direct to negate a constitutional need for further evidence of illegal intravenous drug use to justify testing.

■ In finding the test mandate of section 5—5—3(h) to be constitutional, we acknowledge that blood testing to secure personal information about AIDS exposure is extremely sensitive. (See *Glover v.*

*Eastern Nebraska Community Office of Retardation* (D. Neb. 1988), 686 F. Supp. 243, *aff'd* (8th Cir. 1989), 867 F.2d 461; *Woods v. White* (W.D. Wis. 1988), 689 F. Supp. 874.) However, we find that the testing requirement of section 5—5—3(h) directly addresses the public health concerns surrounding the spread of HIV among intravenous drug users. It does not compel an oppressive treatment, but rather requires mere submission to a minimally intrusive medical technique involving virtually no risk, trauma, or pain. (See *Schmerber*, 384 U.S. at 771, 16 L. Ed. 2d at 920, 86 S. Ct. at 1836; *cf. In re Reliford* (1978), 65 Ill. App. 3d 177.) Additionally, the statute's test mandate is limited to persons convicted of criminality connected with high-risk behavior for the transmission of a deadly disease. (See Ill. Rev. Stat. 1989, ch. 38, par. 22—50.) Further, the statute specifically provides for confidentiality of test results. (*Cf. Woods v. White* (W.D. Wis. 1988), 689 F. Supp. 874.) Lastly, although the Illinois Sexually Transmissible Diseases Act provides for standards different from the ones here, that act does not address the same narrow interests as section 5—5—3(h)'s provisions for blood testing of likely intravenous drug users. We find that the State's interest here is based on an acceptable and narrow purpose and that the HIV-test mandate of section 5—5—3(h) passes constitutional muster. See *In re Reliford* (1978), 65 Ill. App. 3d 177, 182.

We go on, then, to examine the court's specific order of test-result disclosure in this case. Under section 5—5—3(h), the court has the discretion to determine, in accordance with the best interests of the public, to whom, if anyone, the HIV test results should be revealed. Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(h).

■ As an initial position, the defendant has stipulated to the propriety of the court's order that officials at the Winnebago County jail be informed of her test results. We endorse the defendant's agreement with that portion of the court's disclosure order.

In their role as day-to-day physical caretaker for the defendant, the jail personnel could well face practical decisions that they can appropriately address only with knowledge of her infected status. In that regard, for example, their knowledge could be necessary to dissuade them, in the defendant's interest, from exposing her unnecessarily to persons infected with a cold or other contagious condition. Upon considering related information, they might determine that such exposure was a more significant risk for her than for a prisoner not known to be infected. Furthermore, given their own exposure to physical contact with the defendant and the seriousness of contracting the infection, the jail personnel should, in their own interest, be entitled

to knowledge that enables them to cautiously avoid the defendant's accidental or intentional communication of the virus to them. This portion of the court's disclosure order clearly was within the court's discretion.

We now, then, address the remaining, contested portions of the court's disclosure order. Regarding those orders, for disclosure to State's Attorney personnel and to police for the purpose of instituting or initiating criminal charges, the defendant argues that the court's order is needlessly broad. She notes her broad privacy right under Illinois law (*Leopold v. Levin* (1970), 45 Ill. 2d 434, 440-41; *People v. Jackson* (1983), 116 Ill. App. 3d 430, 432-35) and asserts that her "weighty privacy interest is being sacrificed upon an altar of prosecutorial paranoia that she will engage in criminal activity in which her infected status will play a role."

Particularly regarding disclosure to all criminal division lawyers in the office of the State's Attorney, the State argues that the goal to provide appropriate charging information for the future is a legitimate factor supporting test-result disclosure here. The State emphasizes that the defendant was not a person who voluntarily submitted to an AIDS test and that she has a significant criminal history. It urges that her HIV infection can have an impact on possible future offenses.

■ After considering the parties' analyses, we conclude that the court's order for disclosure to the State's Attorney personnel was without justification in the public interest and, thus, an abuse of discretion. The State's most forceful argument to support the order is that in the event of potential prosecution under section 12–16.2 of the Criminal Code of 1961, for example, the defendant's HIV status could well be essential to prosecutors. Section 12–16.2 prohibits a person who knows that he is infected with the HIV virus from certain conduct which is considered to possess the potential for transmitting the virus. Ill. Rev. Stat. 1989, ch. 38, par. 12–16.2.

The defendant argues that if, as has been speculated, she is involved in criminal activity in the future, prosecutors need only petition the court for disclosure of test results. Although the defendant does not directly argue the point, we conclude that her argument is supported by the disclosure language of section 5–5–3(h). As we read it, section 5–5–3(h) does not restrict the court to a one-time consideration of to whom it is in the public's interest to disclose a defendant's positive HIV status. (See *Williams v. Illinois State Scholarship Comm'n* (1990), 139 Ill. 2d 24, 50-51.) Further, the State has presented no persuasive argument, and we do not find, that the

results of the defendant's HIV test would be inaccessible to the State's Attorney in the future event that those results were necessary to a specifically anticipated prosecution.

We note that the fact of the defendant's conviction of possessing injection equipment remains available to the State. Likewise, the State is informed that the defendant submitted to the mandatory HIV testing in connection with that conviction. Consequently, if the defendant's HIV test results become relevant to preparations for specific future prosecution, the State will be in a position to know if it should petition the court for disclosure under section 5—5—3(h). In that event, the court can assess, based on additional relevant facts, whether disclosure to the State's Attorney or his personnel is in the public interest.

Given the importance of the defendant's privacy interest, the absence of the facts demonstrating a current prosecution use for the defendant's test results, and our conclusion that the section 5—5—3(h) disclosure procedure will be available to the State's Attorney if facts supporting a specific future prosecution arise, we find that the court's order of disclosure to State's Attorney personnel was an abuse of discretion. We vacate that portion of the court's judgment.

■■ Regarding release of test results to the Rockford police supervisor, the State acknowledges that one of the court's stated purposes, to allow the police to institute proper criminal charges in the future, is not directly applicable; the State's Attorney has exclusive authority to determine the extent to which a person should be prosecuted for criminal conduct. (*People v. Dandridge* (1987), 152 Ill. App. 3d 941, 943.) Nevertheless, even considering the defendant's privacy interest we find that this portion of the court's disclosure order was within the court's constitutional discretion under section 5—5—3(h).

In reaching our conclusion, we rely on part of the court's second stated rationale for release of test results to the Rockford police department—that disclosure was necessary and in the public interest to protect law enforcement personnel against physical harm. We consider that police have occasion to stop and search individuals. Based on that fact, we find that the trial court here could reasonably and properly determine that section 5—5—3(h) disclosure to the police supervisor was in the public interest.

By ordering disclosure to a supervisory officer who is in a position to advise other officers of proper procedures for dealing with the public, the court provided that supervisor with increased information about officers' potential contact with a population that includes infected individuals. Thus, it better prepared the supervisor to develop

and promulgate an appropriate policy that, for example, would help officers avoid accidental punctures from a possibly infected needle carried on a searched individual's person.

Accordingly, even weighing the defendant's privacy interests (see *Woods v. White* (W.D. Wis. 1988), 689 F. Supp. 874), we find no reason to disturb the court's determination that the direct supervisor of police detectives should be informed of the defendant's positive test for HIV. With that information, the supervisor will be better able to advise officers of appropriate levels of health precautions in their contacts with the public.

Based on the foregoing, we vacate the portion of the order of the circuit court of Winnebago County that ordered disclosure of State's Attorney personnel. We then affirm the order as modified.

Affirmed as modified.

INGLIS and BOWMAN, JJ., concur.