Ms. Paula Pumphrey, Director Department of Community Punishment 323 Center, Suite 1210 Little Rock, AR 72201
Dear Ms. Pumphrey:
This is in response to your request for an opinion on four questions regarding parole and probation supervision. Your questions will be restated and addressed in the order posed.
Your first question is:
 (1) Is it legal for a parole or probation officer to request a probationer/parolee under his/her supervision to take an AIDS test? If so, under what circumstances and by what authority?
I have found no law prohibiting an Arkansas parole/probation officer from requesting an Arkansas parolee/probationer under his or her supervision to take an AIDS/HIV test. Nonetheless, it is my opinion that, at a minimum, any such testing would require careful consideration of the parolee/probationer's constitutional rights to privacy and freedom from unreasonable searches and seizures. Cf., e.g., Harris v. Thigpen, 941 F.2d 1495 (11th Cir. 1991) (mandatory HIV testing of prison inmates); Syring v. Tucker, 174 Wis.2d 787, 498 N.W.2d 370 (1993) (HIV testing of assault and battery defendant). See Dana Eser Hunt, AIDS in Probation and Parole (1989). See also, generally, National Institute of Justice, AIDS Bulletin, Legal Issues Affecting Offenders and Staff (May 1989). I highly recommend reference to Hunt's AIDS in Probation and Parole, a Department of Justice publication that provides a thorough discussion of the many issues surrounding HIV testing in community corrections, which is too lengthy to summarize in this opinion.
Your second question is:
 (2) If a parolee/probationer takes an AIDS test, is the probation/parole officer authorized or entitled to receive the results?
I assume that you are referring to situations in which the parolee/probationer chooses not to disclose the results of an HIV test to his or her parole/probation officer. Disclosure of HIV test results in such a situation is often governed by state law. See Hunt, AIDS in Probation and Parole, supra. Arkansas law does not specify who is entitled to receive HIV test results, other than to require reporting of positive results to the Arkansas Department of Health, to a physician or dentist prior to the rendering of treatment to the infected individual, and to certain individuals following transmission incidents. See A.C.A.20-15-901 to -906 (1987). See also A.C.A. 16-82-101 and -102 (Supp. 1993) (requiring disclosure of HIV test results to victims of certain crimes). It does, however, require certain individuals and entities to regard HIV information as confidential. See A.C.A. 20-15-904(c) (1987), the HIV Shield Law, which provides, in pertinent part:
 All information and reports in connection with persons suffering from or suspected to be suffering from the diseases specified in this section shall be regarded as confidential by any and every person, body, or committee whose duty it is or may be to obtain, make, transmit, and receive such information and reports. . . .
This provision would appear to prohibit the disclosure of a person's HIV test results by most individuals or entities in a position to know that information. It would certainly preclude disclosure by any person or entity required to report the information under A.C.A. 20-15-906(b) (Supp. 1993), including physicians and program directors of state agencies. It would also prohibit the disclosure of HIV test results by the Health Department, whose duty it is to receive the information. See also A.C.A. 20-15-901, which requires the Arkansas Health Department to protect the identity of persons voluntarily participating in its AIDS testing program. It is my opinion that, in the absence of a specific law entitling parole/probation officers to receive the HIV test results of their parolee/probationers, the officers are not entitled to receive the information from any of the individuals or entities covered by the HIV Shield Law referred to above.
The determination of whether a parole/probation officer might be entitled to receive the information from other sources, such as the parolee/probationer himself or third parties, requires the consideration of two competing interests. See Hunt, AIDS in Probation and Parole, supra. On the one hand, community corrections staff such as parole/probation officers allege a need and a right to know test results because of the perceived health risks associated with not knowing and the potential liabilities associated with failing to provide necessary services and failing to notify and thus prevent HIV infection of third parties. On the other hand, the parolee-probationer asserts a constitutional right to privacy in his or her test results. The strength of these interests will necessarily vary from case to case. It is my opinion that parole/probation officers would only be entitled to receive the results of HIV tests of individuals under their supervision when, in a particular instance, the government interests expressed by them outweigh the parolee/probationer's privacy interest.
Your third question is:
 (3) If the parolee/probationer voluntarily gives results of an AIDS test to the parole/probation officer, to whom can the probation/parole officer disclose the results, under what circumstances and by what authority?
For purposes of this opinion, I will assume you are referring to the disclosure of a parolee/probationer's test results without his or her permission.
Arkansas law does not specifically prohibit disclosure of the results of parolee/probationers' HIV tests by their parole/probation officers, although an argument might be made that the officers are subject to the confidentiality requirement imposed by the HIV Shield Law upon their superior, the Director of the Department of Community Punishment, by virtue of her duty to report the information. See A.C.A. 20-15-904(c) (1987); A.C.A.20-15-906(b) (Supp. 1993). On the other hand, state law cannot be said to authorize the disclosure of such information by a parole/probation officer, as disclosure is only authorized in the limited circumstances noted above in response to your second question. Because any disclosure of a parolee/probationer's HIV test results poses a threat to his or her constitutional right to privacy, it is my opinion that a parole/probation officer should exercise great caution in disclosing such information. Obviously, the best course of action would be for the parole/probation officer to encourage the parolee/probationer to disclose the information to the appropriate entities and individuals.
When a parolee/probationer refuses to so disclose the results of his or her HIV test, it is my opinion that the person's parole/probation officer should disclose the information only if careful consideration of the competing interests involved in a particular situation dictates such action. The competing interest would, of course, be the government's interest, as represented and carried out by various entities or individuals, in protecting the infected individual and other members of society vs. the infected individual's interest in protecting his right to privacy. Upon weighing the competing interests, for example, disclosure to public health officials, such as the Arkansas Department of Health, might be deemed appropriate despite the infringement upon an individual's right to privacy.[1]
Because a court considering a challenge to the disclosure of HIV test results by a parole/probation officer would presumably engage in this analysis, it is my opinion that undertaking it prior to any disclosure of such information would best protect an officer from potential liability, as would adherence to any policy established by the Department of Community Punishment on this issue. See, e.g., Woods v. White, 689 F.Supp. 874 (W.D. Wis. 1988), aff'd, 899 F.2d 17 (7th Cir. 1989) (disclosure of HIV test results by prison medical service personnel); Doe v. Borough of Barrington, 729 F.Supp. 376 (D.N.J. 1990) (disclosure of individual's HIV status by police officer). For a detailed discussion of the myriad legal considerations surrounding this issue, see Hunt, AIDS in Probation and Parole, supra, at 37-40, and Comment, The Constitutionality of Parole Departments Disclosing the HIV Status of Parolees, 1992 Wis. L. Rev. 1993 (1992).
Your fourth question is:
 (4) Are there any decisions regarding parole/probation officers being sued for disclosing information regarding a client's AIDS test results?
My research has revealed no reported decisions in which a parole/probation officer has been sued for disclosing information regarding a client's AIDS test results. Various other individuals have been sued for disclosing such information, however. See, e.g., Woods v. White, supra (prison medical service personnel); Doe v. Borough of Barrington, supra (police officer).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Catherine Templeton.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] As has already been indicated herein, the Director of the Department of Community Punishment would appear to have a duty under A.C.A. 20-15-906(b)(5) (Supp. 1993) to report to the Department of Health any disclosure to her of an HIV/AIDS diagnosis.