NYGAARD,
concurring and dissenting:
I agree with Judge Roth’s conclusion that prisoners have a right to privacy in their medical information, and that this right may be compromised only if it conflicts with a legitimate penological objective that satisfies the criteria outlined in Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). I would conclude, however, that Doe’s right to privacy in medical matters was clearly established at the time of the alleged violations such that Appellees, as reasonable employees of the Pennsylvania Department of Corrections, should have known that the right existed and therefore cannot be dismissed from defending these allegations on the basis of qualified immunity. Hence, I dissent from the conclusions contained in Section III, B. 2 of Judge Roth’s opinion.
*331 It is now axiomatic that the doctrine of qualified immunity bars government officials from liability for damages unless they disobeyed “clearly established] statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Debates over defendants’ qualified immunity typically turn on this “clearly established right” clause. The Supreme Court has unpacked the meaning of Harlow by providing the following analytic parameters: For a right to be clearly established, the “contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right,” Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Nonetheless, at the same time, a court need not have ruled on a case bearing a “precise factual correspondence” with the one under consideration. Assaf v. Fields, 178 F.3d 170 (3d Cir.1999), cert. denied, 528 U.S. 951, 120 S.Ct. 374, 145 L.Ed.2d 292 (1999). Thus, government officials are not barred from the protection of qualified immunity if they fail to predict fluctuations in legal debates. They will not, however, be granted immunity if they fail to make obvious inferences from a generally established right, to its application in particular situations.
The question is whether these members of the Pennsylvania Department of Corrections should have known from 1995 through 1997 that prisoners possessed a right to the privacy of their medical records. I proceed to my conclusion as follows:
First, we have recognized the right to confidentiality in medical records since 1980. United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3d Cir.1980). We stated in Westinghouse that medical records, which “may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection. Information about one’s body and state of health is a matter which the individual is ordinarily entitled to retain within the private enclave where he may lead a private life.” Id. at 577 (citations omitted). Those infected with HIV are often subjected to discrimination, ridicule, and violence, and therefore by 1995 we recognized the heightened importance of respecting the medical privacy of HIV carriers. See Doe v. Southeastern Pennsylvania Transp. Auth., 72 F.3d 1133, 1140 (3d Cir.1995) (noting not only the importance of maintaining the privacy of medical records but also the corollary responsibility of maintaining the confidentiality of prescriptions for medications used to treat AIDS.); see also Doe v. City of New York, 15 F.3d 264 (2d Cir.1994); Doe v. Borough of Barrington, 729 F.Supp. 376 (D.N.J.1990). Thus the constitutional right to privacy of medical information in the non-prison context was well established at the time the defendants here “leaked” the information about Doe.
Likewise, the standard for determining the legitimacy of an infringement on a prisoner’s constitutional right, such as the right to confidentiality in medical records, was well established by 1995. In Turner, 482 U.S. at 89, 107 S.Ct. at 2257, the Supreme Court determined that any alleged violation of a prisoner’s right will be unwarranted unless it is determined to be “reasonably related to legitimate penological interests.” See also Washington v. Harper, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990); O’Lone v. Estate of Shabazz, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); Monmouth County Corr. Inst. v. Lanzaro, 834 F.2d 326, 343 (3d Cir.1987). Turner provided four questions to guide our analysis. First, is there a valid and rational connection between the regulation or activity and the legiti *332 mate governmental interest? Second, is there an alternative means for the prisoner to exercise the right? Third, will accommodating the right cause an unreasonable burden on the staff, other inmates, or prison resources? Fourth, is there another obvious means to accomplish the prison’s objective? The Court’s intention in fashioning this test was “to formulate a standard of review for prisoners’ constitutional claims that is responsive both to the policy of judicial restraint regarding prisoner complaints and [to] the need to protect constitutional rights.” Turner, 482 U.S. at 89, 107 S.Ct. at 2257 (citations omitted).
Although we have given “[p]rison officials ... broad discretion in fashioning appropriate responses to legitimate peno-logical objectives consistent with the constitutional rights of inmates,” Monmouth County, 834 F.2d at 343, Turner demands that the responses at issue reasonably serve a valid penological interest. The courts must not, therefore, allow our analysis to be obscured by bald assertions from prison officials who claim that the policy in question serves a legitimate end. Expressing some frustration that the Turner standard was being misapplied, the Supreme Court restated its purpose and application in Washington v. Harper, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). “We made quite clear,” Justice Kennedy admonished, “that the standard of review we adopted in Turner applies to all circumstances in which the needs of prison administration implicate constitutional rights.” Id. at 223, 110 S.Ct. at 1038.
Well before 1995, therefore, officials for the Pennsylvania Department of Corrections should have known 1) that a constitutional right to privacy in medical records exists, particularly for HIV-related information, and 2) that under Turner, prisoners do not forfeit constitutional rights except when those rights cannot reasonably be reconciled with legitimate penological objectives. With these two premises well known, I would expect reasonable prison officials to infer that they cannot arbitrarily violate a prisoner’s right to privacy in medical information. In this situation, the “contours of the right [were] sufficiently clear” for Appellees to understand that they were violating Doe’s constitutionally protected right. Anderson, 483 U.S. at 640, 107 S.Ct. at 3039.
Next, I believe that a “consensus of eases of persuasive authority” had been established by 1995. Wilson v. Layne, 526 U.S. 603, 616, 119 S.Ct. 1692, 1700, 143 L.Ed.2d 818 (1999). The Eleventh Circuit Court of Appeals had presumed the existence of the right to privacy in HIV-related medical information for prisoners by 1991. See Harris v. Thigpen, 941 F.2d 1495 (11th Cir.1991). Likewise, in 1992 the Court of Appeals for the Fifth Circuit reviewed segregation of HIV-positive inmates under the Turner test, finding that the identification and segregation of HIV-positive prisoners “obviously serves a legitimate penological interest,” and thereby acknowledging the existence of a prisoner’s right to privacy in medical information that can only be abrogated by a legitimate penological objective. Moore v. Mabus, 976 F.2d 268, 271 (5th Cir.1992).
In 1993, the Eastern District of Pennsylvania held that inmates have a constitutionally protected privacy interest in nondisclosure of confidential medical information concerning their HIV status. Faison v. Parker, 823 F.Supp. 1198 (E.D.Pa.1993). Although the court recognized this right, it ultimately held that the disclosure of such information in a presentencing report served the state’s compelling and countervailing interest of utilizing this knowledge to provide an appropriate sentence and care regimen. The balance *333 of interests favored disclosure because the medical information was not included in the public record, was treated as confidential, and was provided only to the appropriate officials. Thus, by 1993 the Eastern District of Pennsylvania recognized the right to privacy in inmates’ BTV-related medical information and further understood that this right could be compromised only by the need to meet a compelling and incompatible government interest. The Eastern District of Pennsylvania reinforced this ruling in Austin v. Pennsylvania Dept. of Corr., 876 F.Supp. 1437 (E.D.Pa.1995), which I will discuss in more detail below.
A series of other District Courts reached the same conclusion by 1995. Clarkson v. Coughlin, 898 F.Supp. 1019, 1041 (S.D.N.Y.1995) (“Prison inmates retain a constitutional right to privacy concerning medical information about them.”); Nolley v. County of Erie, 802 F.Supp. 898 (W.D.N.Y.1992); Inmates of N.Y. State with Human Immune Deficiency Virus v. Cuomo, No. 90-CV-252, 1991 WL 16032, at *3 (N.D.N.Y. Feb.7, 1991) (“[T]he federal Constitution protects against the unwarranted and indiscriminate disclosure of the identity of HIV-infected individuals and of their medical records; that is to say, the court accepts ... the proposition that the constitutional right of privacy extends to such matters, and that prisoners enjoy such a privacy right....”); Borough of Barrington, 729 F.Supp. at 384 (“The government’s interest in disclosure here does not outweigh the substantial privacy interest involved. The government has not shown a compelling state interest in breaching the Does’ privacy.”); Woods v. White, 689 F.Supp. 874 (W.D.Wis.1988), aff'd. without opinion, 899 F.2d 17 (7th Cir.1990);[1] Rodriguez v. Coughlin, No. CIV-87-1577E, 1989 WL 59607 (W.D.N.Y. June 2, 1989); Doe v. Coughlin, 697 F.Supp. 1234, 1238 (N.D.N.Y.1988) (“[I]n recognition of the particularly personal nature of the information potentially subject to disclosure under the state’s program, the court determines that the prisoners subject to this program must be afforded at least some protection against the non-consensual disclosure of their diagnosis.”)
Appellees argue, and Judge Roth agrees, that these cases do not constitute a proper consensus. T o the contrary, I agree with the Court of Appeals for the Eighth Circuit, which explained that “[i]n the absence of binding precedent, a court should look to all available decisional law, including decisions of state courts, other circuits and district courts.” Norfleet v. Arkansas Dep’t of Human Services, 989 F.2d 289, 291 (8th Cir.1993); see also Buckley v. Rogerson, 133 F.3d 1125, 1129-30 (8th Cir.1998) (finding a right clearly established on the basis of decisions from out of circuit district courts). We should remember that the Supreme Court has recently made clear that all that is required to defeat claims of qualified immunity is a “consensus of cases of persuasive authority,” and not a consensus of binding authority. Wilson, 526 U.S. at 616, 119 S.Ct. 1692. Thus although a lone District Court opinion may not secure a right, when that opinion is combined with opinions from the Supreme Court, Courts of Appeals, and a variety of District Courts, then I would conclude that the right was established to an extent sufficient to notify the officials.
Two other factors render the officials’ failure to recognize Doe’s right to privacy in his medical records still more unreason *334 able. First, The Pennsylvania Confidentiality of HIV Related Information Act, 35 P.S. § 7603, which became effective on March 1, 1991, provides a statutory right to nondisclosure. Section 7607 states:
(a) Limitations on disclosure. — No person or employee, or agent of such person, who obtains confidential HIV-related information in the course of providing any health or social service or pursuant to a release of confidential HIV-related information under subsection (c) may disclose or be compelled to disclose the information.
The statute makes no exception for inmates, as it states that HIV-related information can be disclosed to
[ejmployees of county mental health/mental retardation agencies, county children and youth agencies, county juvenile probation departments, county or State facilities for delinquent youth, and contracted residential providers of the above-named entities receiving or contemplating residential placement of the subject, who:
(i) generally are authorized to receive medical information; and
(ii) are responsible for ensuring that the subject receives appropriate health care; and
(iii) have a need to know the HIV-r elated information in order to ensure such care is provided.
Id. Because no exception is made for adult prisoners, and all other exceptions are clearly stated, the Department of Corrections should have known by March 1991 that prisoners possess a right to the privacy of their HIV-related information. Considering the specificity of the statute, and its precise applicability to the facts of this case, the right under review was clearly established in 1991.
Appellees, and Judge Roth, claim that a state statute is irrelevant to the issue of qualified immunity on a federal claim. See Davis v. Scherer, 468 U.S. 183, 194-97, 104 S.Ct. 3012, 3019-21, 82 L.Ed.2d 139 (1984). I disagree. As the Supreme court explained in Elder v. Holloway, Davis held that
an official’s clear violation of a state administrative regulation does not allow a § 1983 plaintiff to overcome the official’s qualified immunity. Only in this context is the Court’s statement comprehensible: ‘A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the appellee official’s qualified immunity only by showing that those rights were clearly established ... ’ Davis, in short, concerned not the authorities a court may consider in determining qualified immunity, but this entirely discrete question: Is qualified immunity defeated where an appellee violates any clearly established duty, including one under state law, or must the clearly established right be the federal right on which the claim for relief is based? The Court held the latter.
510 U.S. 510, 515, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994) (citations omitted).
The reason why I disagree with Judge Roth is that although a state statute will not, by itself, place an official on notice of a federal- right, to me such a statutory right should raise the official’s awareness that a parallel federal right may exist. Such a warning should facilitate a reasonable official’s ability to make the inference discussed above. This position is congruent with the objectives of the doctrine of qualified immunity. If a state statute clearly articulates a right, and places those within its jurisdiction on notice of that right, and if that right perfectly coincides with a federally protected right, then why would we not consider the statute’s existence when determining whether the offender should *335 have known of the federal right? I think we should. Indeed it seems to me that a state statute, locally promulgated, and free from many of the uncertainties of case law, most effectively notifies the community of a protected right, and reinforces federal law.
Regardless of how a person learned of the right, and regardless of whether she thought she was violating state or federal law, she knew that a right existed and that she was violating it. The purpose of qualified immunity is to protect government officials from having to defend themselves in litigation over rights and duties that they did not know they were violating. Here, the Appellees were clearly notified by the 1991 statute that Doe was entitled to the privacy of his medical records under state law. The inference that prisoners were entitled to the same right under federal law was implicit by 1995. If we allow the state statute to play no role in assessing whether or not the officials should have known of the federal right, then we allow officials to turn a blind eye to the general state of the law and discourage them from making a good faith effort to recognize such implicit principles. I consider this good faith effort to be within the responsibilities of a “reasonable official.”
In addition, as powerful evidence that these officials knew they were violating Doe’s right to privacy, in an opinion establishing a right to privacy for inmates’ HIV-related medical records, Austin v. Pennsylvania Dep’t of Corr., the very agency and officials before us now were also appellees in that case. In that opinion in January 1995, the Court stated that the “DOC has agreed to keep inmates’ medical information regarding HIV status confidential and to advocate a universal preeau-tions policy in place of the current Contagious Disease Notification Policy in its forthcoming negotiations with the union representative of its custody staff.” Austin, 876 F.Supp. at 1453. This decision alone directly notified Appellees of their obligation to protect Doe’s privacy right. As Judge Roth correctly states, court approval of a settlement does not provide a legal decision regarding the constitutionality of the elements of the settlement. But that is not the test. The court clearly warned the very institution before us in this matter that it risked constitutional violations by disclosure. Indeed the language the Court used was that disclosure of a prisoner’s HIV-related medical information, if “unrelated to any penological interest ... would most likely violate state law, and the Constitution of the United States.” Id. at 1437. Austin explained that “[although individuals have an interest in preventing disclosure of their HIV status which is protected by state law and the Constitution, inmates’ rights must necessarily yield to a certain extent to legitimate penological interests,” and then clearly stated the criterion of the Turner test. Id. In light of this notification, it seems disingenuous to claim that the officials here deserve protection from Doe’s claims because they did not know that they could not arbitrarily disclose a prisoner’s medical information.[2]
In summary, the combination of the preponderance of case law, the state statute, and the Pennsylvania Department of Corrections’ previous agreement to respect privacy in prisoners’ HIV-related materials, clearly established the right in question. I would find that, taken together, these factors defeat Appellees’ claim to qualified immunity. I therefore respect *336 fully dissent from this aspect of the Majority’s decision.

. Judge Roth states that the Seventh Circuit "rejected" Woods in Anderson v. Romero, 72 F.3d 518 (7th Cir.1995). This is not entirely accurate. The court in Anderson merely declined to reach the question.

. Finally, I note that the manner in which this delicate information was disseminated indicates to me that the officials knew they were misbehaving, but persisted in doing so regardless of the fact that they were mistreating Doe.