## SCHAEFER et al. *v.* GILDEA et al.

1. Under the general issue to the common counts in assumpsit for work and labor, the defendant may recoup damages.

2. A party may not stand by and see work in the erection of a building progress to completion, and then for the first time object that the work was not done in strict accordance to the plan, refuse payment and charge the builder with the cost of reconstruction. The builder is, in such case, entitled to recover what the work is reasonably worth.

3. When work is done under a contract, the terms of the contract should settle the amount to be paid, unless it is shown that in consequence of variations from the plan, the compensation agreed upon should be diminished, and the proper measure of damages in such case is the diminution of the value of the building resulting from the variation.

4. The declarations of one acting as the agent of both parties to a contract, if made within the scope of his authority, are properly receivable in evidence in an action between the parties to the contract.

5. The recalling a witness is a matter within the discretion of the court below and cannot be assigned for error.

*Error to the Probate Court of Arapahoe County.*

Messrs. SAYRE, WRIGHT & BUTLER, for plaintiffs in error.

Messrs. JACOBSON & LE FEVRE, for defendants in error.

BRAZEE, J. The defendants in error were the plaintiffs below, and declared in assumpsit upon common counts for work, labor and services, laying their damages at $1,500. The plea was the general issue. The cause was tried by the court, a jury being expressly waived. The court found for the plaintiffs below $953.50, for which judgment was given with costs.

The evidence shows a parol contract between the plaintiffs and defendants, by which the plaintiffs below agreed

to buy for the defendants the brick in constructing the walls of a building three stories high, including the basement, according to a ground plan, fifty feet wide and ninety feet deep, with a partition wall running through the center of the building; the defendants below agreeing to pay eight dollars and fifty cents per thousand for laying the brick.

The only dispute about the terms of the agreement arising upon the evidence is, whether the walls were to be so constructed as to admit of their being carried up another story. In our view, this disputed point of fact was well disposed of in the court below.

The principal questions of law in the case have reference to damages claimed by reason of the misplacement of the side and center walls of the building.

One question was whether under pleadings as in this case, common counts and the general issue, damages can be recouped; we think they can where a case for damages is made out by a defendant, upon principle and under authorities cited in 5th Robinson's Practice, page 271, etc. The reason for the rule seems to be this, that on a *quantum meruit* for work and labor, the plaintiff should only recover what he deserves, and where the work sued for has become useless or of less value through the plaintiff's fault in executing it, such negligence and the resulting damages may be shown under non-assumpsit.

The evidence discloses the fact that the lines of the outer walls were located by an engineer in the employ of the defendants below, by stakes in accordance with which the cellar, which was co-extensive in area with the building, was dug under the direction of the defendants below, and one of them was present when the corners of the foundation walls were adjusted in the excavation according to the lines the defendants below had thus established. Therefore the misplacement of the outer walls was not the fault of the plaintiffs below, nor can they be charged with damages resulting therefrom.

As to the partition, the following facts appear. When

the walls were up to the top of the first story, or to a point where the floor of the second story was to be laid, the variation of the line of the partition wall three inches from the center line of the building where the plan showed it should have been, was discovered by the defendants below. They did not, however, object to the work going on, nor demand that the partition wall should be taken down then and there and rebuilt upon the line indicated by the plan ; on the contrary, by their acts they accepted that wall as it was ; they changed the length of their joists to conform to the difference in width of the two compartments of the building, laid the floors, put up the iron front, roofed the building, finished it off and painted it, accommodating their work to the change from the plan.

These acts on their part with knowledge of the variation from the plan amount to an acceptance and assent to the change or waiver of strict performance.

It would be manifestly unjust to allow the owner, under such circumstances, to stand by and see the walls progress to completion, lay the joice, floor and roof his building, put up the front, paint and finish the whole and when pay for laying the walls is demanded, for the first time object that the walls are not placed according to the plan by a few inches, refuse payment and charge the builder with the cost of reconstruction.

Whether, under the circumstances of this case, the defendants might have been allowed damages resulting from the variance or not, we do not express an opinion, but assuming that in respect to the partition wall a case on the part of the defendants below was presented entitling them to damages, the questions put by their counsel did not afford the true rule.

These questions assumed that the damages would be the cost of paring off one side wall where it had been built too far upon the adjoining land, and taking down the partition wall and rebuilding it upon the center line, involving displacement, it may be, of the roof, floors and front. This would involve the reconstruction of the building to a great

extent, and an amount of damages far in excess of what would have necessarily resulted from the error in location of the partition when the defendants below discovered it. That error could then have been corrected at the comparatively small expense of rebuilding a part of the division wall if it had been insisted upon then. If the defendants below were entitled to any damages, it would be the difference in the value of the building as constructed and what it would have been worth if it had been constructed according to the plan.

Because the contract was not strictly complied with in respect to the location of the walls, it is urged that the plaintiff below was not entitled to recover any thing, or, if any thing, not the full contract price. It may be conceded that the position would be sound, if in respect to the outer side walls, the defendants below had not, as we have seen, been in fault, and had not waived a strict performance in respect to the partition wall.

Under these circumstances the plaintiffs below, if not entitled to recover according to the contract, were entitled at least to what their work was reasonably worth. *Pike* v. *Nash*, 1 Keyes, 335 ; *Dermott* v. *Jones*, 2 Wall. 9.

The questions overruled touching the matter of damages were properly overruled, and the assignments of error as to the overruling of these questions are not well taken.

The work was done under a contract, and the terms of the contract should settle the amount to be paid, unless it is shown that in consequence of the variations from the plan the compensation agreed upon should have been diminished. As we have seen, the proper measure of damages was the diminution in value of the building, resulting from the variation from the original plan, and the defendants below should have furnished the evidence of it, but failing to do so, the finding for the plaintiff was proper.

One Gill, a brick maker, who had a brick kiln, was to furnish the brick for the building, and the parties agreed to take his count in determining the number of brick laid by the

plaintiffs below. Gill was called as witness by the plaintiffs below and testified that in the fall of 1871 he sold the defendants a lot of brick to complete their building, and furnished them about 409,000 ; that he rendered them an account; understood when he began furnishing that they were to get the brick laid kiln count, though he gave both an account of the brick. He was then asked :

Question. "How much did you tell the plaintiffs that there was?" This was objected to as hearsay by the defendants below, the objection was overruled and they excepted.

Answer. "I could not tell exactly, but I think it was somewhere between 370,000 and 380,000, when they had the building up, but I am not positive. I told Hibschle at the time they got through putting up the building."

He further testified under the same objection — "It was Lambert or Gildea that asked me about how many brick I had furnished up to that time, and what I told them was correct. I made the same statement to Hibschle, I think about the same time."

We think that Gill was the agent of both parties, and his declarations within the scope of his authority, which was to count and determine the number of brick, and declare the same to the parties, were properly receivable as evidence.

Gill's relation to the parties was analogous to that of an arbitrator. The decision of an arbitrator is binding after publication, and a parol award is good. 5 Cow. 383 ; and *French* v. *New*, 28 N. Y. 147 A parol award delivered to one party in the absence of the other is binding. *Cocks* v. *Macclesfield*, 2 Dyer, 218 *b ;* Russel's Power and Duty of Arbitrators, 235.

Again, the number of brick was an element of the contract to be ascertained by Gill. He became the agent of the parties to make or determine the contract, in this respect he was authorized to declare the evidence of it. For instance, a power of attorney authorizing an attorney in fact to convey all right, title and interest of an owner of certain

real estate, carries with it the power to execute the proper deed to convey the title which then becomes evidence of title in the grantee. So the authority given by the owner of personal property to an agent to sell it, empowers the agent to furnish the evidence of sale, and the declaration of the agent at the time of the sale, or a bill of sale there executed by him, is the evidence of it; whether the evidence of the sale rests in parol or in writing it is the declaration of the agent that binds the owner.

According to this principle in the case of *Mead* v. *Mc-Dowell*, 5 Binn. 195, the supreme court of Pennsylvania held, that where one confides to another the power of making a contract, he confides to him the power of furnishing the evidence of that contract, and if the contract is by parol, subsequent declarations of the party are evidence though not conclusive. Inasmuch as Gill was empowered by both parties to determine the number of the brick in respect to their contract, his declarations were competent evidence of the fact which he was authorized to determine within the principle of the above decision.

After Gill had been examined and it became apparent that he did not remember the number of brick furnished for the building in question, the witness Lambert was recalled. The defendants below objected to his being recalled, and the objection was overruled. This objection went to a matter clearly within the discretion of the court, viz.: whether to allow Lambert to be re-examined or not, and in respect to the ruling of the court in such matters error cannot be assigned.

Lambert then, without further objection, testified that he had a conversation with Gill, who told him the number of brick furnished was 375,000, at the time the building was done, and at that time told Hibschle what Gill had informed him that he had delivered up to that time, to which Hibschle made no reply. This evidence was not objected to on the ground of incompetency, and if it had been we think it was clearly admissible. The circumstance of Hibschle's silence when this communication was made to him shows an ac-

quiescence in the correctness of the statement of the number of brick. More than this, there was no evidence showing that Gill's statement was in any respect incorrect, nor was it in any way controverted. We think that Gill's declarations were properly given in evidence and the motion for nonsuit was properly oevrruled.

Objections were made to evidence tending to show how the number of brick in a wall, by the custom of bricklayers, might be ascertained after the wall had been completed. This was irrelevant in this case, after it appeared the parties had agreed to abide by Gill's count. No computation by this custom was shown, and it is perfectly plain that the court was not governed by it in determining the amount found for the plaintiff below, as it seems to us. The number of brick, according to Gill's statement, was 375,000 ; 4,000 remained after the walls were completed, which deducted from 375,000, left 371,000 as the number that were laid in the walls of the building ; the laying of which at $8.50 per thousand, gives $3,153.50, as the amount the laying of the brick came to ; $2,200 was paid upon the contract, which deducted from the amount, at the contract price, leaves $953.50, the precise sum found for the plaintiffs below. It is therefore apparent that the evidence of the custom had no effect upon the finding whatever, and was therefore harmless.

There are sixty-one assignments of error, respecting rulings on the admissibility of evidence. What we have passed upon are all that are material to consider. The others do not appear to be erroneous, nor would it be profitable to discuss them.

The judgment is

*Affirmed.*

HALLETT, C. J., dissenting :

Declarations of the witness Gill, as to the number of brick used in the building, made to defendants in error, after the building was completed, were not, as I think, competent evidence, and were improperly received. Upon that ground I am for reversing the judgment.