David E. GRAVEN, Plaintiff–Appellant,

v.

VAIL ASSOCIATES, INC., Defendant–Appellee.

No. 93CA0712.

Colorado Court of Appeals, Div. II.

May 19, 1994.

Rehearing Denied June 16, 1994.

Certiorari Granted Jan. 30, 1995.

David E. Graven, pro se.

White & Steele, P.C., Glendon L. Laird, Monty L. Barnett, Denver, for defendant-appellee.

Opinion by Judge KAPELKE.

In this action to recover damages for injuries sustained in a skiing accident, plaintiff, David E. Graven, appeals from a summary judgment entered in favor of defendant, Vail Associates, Inc. (Vail). We affirm.

In his complaint, plaintiff alleged that, while skiing at Vail, Colorado, on April 3, 1992, he was coming to a stop at the side of an intermediate ski run when he encountered "slushy snow and lost his edges, fell down, slipped several feet, then plunged forty-fifty feet down an unmarked steep ravine" and collided with a cluster of trees. Plaintiff claimed that Vail, as operator of the ski area,

had negligently failed to post signs warning skiers of the "ravine."

Vail filed a motion for summary judgment in which it argued that plaintiff's claim was barred by the Colorado Ski Safety Act. § 33–44–101, et seq., C.R.S. (1984 Repl.Vol. 14). On the same day that Vail filed its motion for summary judgment, it sent plaintiff a written offer of settlement pursuant to § 13–17–202(1)(a)(II), C.R.S. (1987 Repl.Vol. 6A), offering to settle the case for one dollar. Plaintiff rejected the offer. The trial court granted the motion for summary judgment and awarded Vail costs pursuant to § 13–17–202(1)(a)(II).

I.

Plaintiff first contends that the trial court erred in granting Vail's motion for summary judgment. We disagree.

The purpose of summary judgment is to permit the parties "to pierce the formal allegations of the pleadings and save the time and expense connected with trial when, as a matter of law, based on undisputed facts, one party could not prevail." *Peterson v. Halsted,* 829 P.2d 373, 375 (Colo.1992).

Summary judgment is a drastic remedy and should be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c). A material fact is a fact that will affect the outcome of the case. *Peterson v. Halsted, supra.*

In reviewing the propriety of a summary judgment, an appellate court must apply the principle that the moving party has the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved against the moving party. *Peterson v. Halsted, supra; Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988).

In response to Vail's motion for summary judgment here, plaintiff submitted his own affidavit, in which he stated that he had been skiing for twenty-two years, identified the run he was skiing on when he fell, described the ravine, and indicated that there were no

warning signs in the area. He also stated that, in his opinion, and in the opinion of others with whom he had skied, falling down a 40–50 foot ravine is not an inherent risk of skiing. He concluded that the ravine was a dangerous area which should have been marked as such. The trial court accepted the factual allegations in plaintiff's affidavit as true for purposes of the summary judgment motion.

In its order granting summary judgment, the trial court concluded that there were no material factual issues in dispute, that plaintiff's injuries were caused by inherent dangers and risks of skiing, and that, under the Ski Safety Act, Vail had no duty to warn skiers of such dangers. The court also found that plaintiff had negligently failed to ski within his abilities. It therefore concluded that Vail was entitled to judgment as a matter of law.

### A.

In challenging the summary judgment, plaintiff first argues that the court erred in concluding that Vail did not have a duty to warn because the ravine or drop-off was within the definition of "inherent dangers and risks of skiing" contained in § 33–44–103(10), C.R.S. (1993 Cum.Supp.). We perceive no error.

■ At the outset, we note that the issue of whether Vail had a duty to warn its patrons is a question of law to be resolved by the court. *Bath Excavating & Construction Co. v. Wills,* 847 P.2d 1141 (Colo.1993). This issue of duty can be resolved here through an interpretation of the Ski Safety Act.

■ Our goal in interpreting any statute is to determine and give effect to the intent of the General Assembly. *United Blood Services v. Quintana,* 827 P.2d 509 (Colo.1992); *First Bank v. Department of Regulatory Agencies,* 852 P.2d 1345 (Colo.App.1993).

■ A statute should not be interpreted in a piecemeal fashion. Rather, it should be "construed as a whole so as to give consistent, harmonious, and sensible effect to all of its parts." *Massey v. District Court,* 180 Colo. 359, 506 P.2d 128, 130 (1973); *see also*

*Martinez v. Badis,* 842 P.2d 245 (Colo.1992). Thus, the meaning of any one section of a statute must be gleaned from a consideration of the overall legislative purpose. *People v. Alpert Corp.,* 660 P.2d 1295 (Colo.App.1982).

■ The Ski Safety Act was originally enacted in 1979. The following is a statement of the purpose of the act, according to its legislative declaration:

> Realizing the dangers that inhere in the sport of skiing, regardless of any and all reasonable safety measures which can be employed, the purpose of this article is ... to further define the legal responsibilities of ski area operators and their agents and employees; to define the responsibilities of skiers using such ski areas; and to define the rights and liabilities existing between the skier and the ski area operator and between skiers.

Section 33–44–102, C.R.S. (1984 Repl.Vol. 14).

The General Assembly amended the Ski Safety Act in 1990. The legislative declaration contained in the bill enacting the 1990 amendments includes the following:

> The general assembly ... finds that, despite the passage of the 'Ski Safety Act of 1979', ski operators of this state continue to be subjected to claims and litigation involving accidents which occur during the course of the sport of snow skiing, which claims and litigation and threat thereof unnecessarily increase Colorado ski area operators' costs. The general assembly further finds that such increased costs are due, in part, to confusion under the [act] as to whether a skier accepts and assumes the dangers and risks inherent in the sport of skiing. It is the purpose of this act, therefore, to clarify the law in relation to skiing injuries and the dangers and risks inherent in that sport, to establish as a matter of law that certain dangers and risks are inherent in that sport, and to provide that, as a matter of public policy, no person engaged in that sport shall recover from a ski area operator for injuries resulting from those inherent dangers and risks.

Colo.Sess.Laws 1990, ch. 256 at 1540. Thus, in enacting the amended statute, the General Assembly intended to insulate resort operators from liability for ski injuries caused by the defined "inherent dangers and risks of skiing."

Under § 33–44–103(10):

'Inherent dangers and risks of skiing' means those dangers or conditions which are an integral part of the sport of skiing, including ... snow conditions as they exist or may change, such as ... slush ...; surface or subsurface conditions such as ... trees, or other natural objects, and collisions with such natural objects; ... variations in steepness or terrain, whether natural or as a result of slope design, snowmaking or grooming operations, including but not limited to roads and catwalks or other terrain modifications; ... and the failure of skiers to ski within their own abilities....

The statute further provides that "no skier may make any claim against or recover from any ski area operator for injury resulting from any of the inherent dangers and risks of skiing." Section 33–44–112, C.R.S. (1993 Cum.Supp.).

█ The Ski Safety Act does not immunize ski resort operators from all liability, however. The act provides that:

A violation of any requirement of this article shall, to the extent such violation causes injury to any person or damage to property, constitute negligence on the part of the person violating such requirement.

Section 33–44–104(1), C.R.S. (1984 Repl.Vol. 14). Thus, an operator may be held liable in a negligence action for violating any of the specific duties or requirements imposed on the operator by the statute.

However, the duties imposed on ski area operators by the act "concern a very limited number of specifically identified activities and conditions." *Giebink v. Fischer*, 709 F.Supp. 1012, 1015 (D.Colo.1989). Such duties relate only to the posting of certain specified signs and to providing lighting and other conspicuous markings for snow-grooming vehicles and snowmobiles. Sections 33–44–106 through 33–44–108, C.R.S. (1984 Repl.Vol. 14).

One such obligation imposed on a ski operator is to post signs in the areas where lift tickets and ski school lessons are sold and at the uphill loading point of each base area lift warning skiers that, under Colorado law, they assume the risk of injury resulting from any of the inherent dangers and risks of skiing and may not recover from the operator for such injuries. Section 33–44–107(8), C.R.S. (1993 Cum.Supp.). Nothing in the statute suggests that a ski area operator has a duty to provide any additional warnings regarding the defined "inherent dangers and risks of skiing."

To the contrary, in two separate sections, the Ski Safety Act specifies that ski area operators do *not* have a duty to warn patrons about particular inherent dangers and risks of skiing such as variations in steepness or terrain. First, while the statute prescribes a particular type of sign to be used for designating "danger areas," the statute goes on to state that "danger areas" do not include "areas presenting inherent dangers and risks of skiing." Section 33–44–107(2)(d), C.R.S. (1993 Cum.Supp.). While the semantics of this provision have a curious Catch–22 flavor, the intent of the General Assembly is, nevertheless, evident.

Similarly, while the statute requires a ski area operator to mark man-made structures that are not readily visible from a distance of at least 100 feet, it also provides that "variations in steepness or terrain, whether natural or as a result of slope design or snowmaking or grooming operations" are not man-made structures. Section 33–44–107(7), C.R.S. (1993 Cum.Supp.).

In light of the General Assembly's clear intent to limit, rather than expand, the liability of ski area operators, we cannot impose duties on operators beyond those set forth in the statute. *Cf. Northcutt v. Sun Valley Co.*, 787 P.2d 1159 (Idaho 1990) (finding that under the Idaho Ski Act a ski area operator has no duties beyond those enumerated in the Act).

The trial court concluded that plaintiff's injuries were caused by inherent dangers

and risks of skiing and that, under the Ski Safety Act, Vail had no duty to warn skiers about those inherent dangers. Plaintiff does not dispute the court's conclusion that the slush he encountered and the trees with which he collided at the base of the drop-off were inherent dangers of skiing. However, he contends that a ravine is not within the statutory definition of inherent dangers of skiing because "ravines" are not specifically mentioned in § 33–44–103(10). We disagree with his contention.

The statute expressly provides that "variations in steepness or terrain, whether natural or as a result of slope design, snowmaking or grooming operations" are an inherent danger and risk of skiing. Section 33–44–103(10). While plaintiff refers to the drop-off here as a "ravine," it is, nevertheless, as the trial court determined, a variation in steepness or terrain. As such, it is within the statutory definition of "inherent danger or risk of skiing."

Relying on *Clover v. Snowbird Ski Resort,* 808 P.2d 1037 (Utah 1991), plaintiff argues that whether a particular risk is a danger that is inherent to the sport of skiing is a factual question that must be answered on a case-by-case basis. *Clover* involved a suit brought by a skier who was injured in a collision with an employee of the resort operator. Interpreting Utah's Inherent Risk of Skiing Statute, Utah Code Ann. § 78–27–51, et seq. (Supp.1986), the trial court entered summary judgment in favor of the operator.

The Utah Supreme Court reversed, holding that "the determination of whether a risk is inherent [must] be made on a case-by-case basis, using the entire statute, not solely the list" of inherent dangers enumerated in the statute. The court further held that, under the Utah statute, a ski resort operator has a duty to warn its patrons of the general dangers they may encounter when skiing and a duty "to use ordinary care to protect its patrons." The court held that "if an injury was caused by an unnecessary hazard that could have been eliminated by the use of ordinary care, such a hazard is not, in the ordinary sense of the term, an inherent risk of skiing...." *Clover v. Snowbird Ski Resort, supra,* 808 P.2d at 1045–47.

The Utah statute, like the Colorado statute, provides that a skier may not recover from a ski area operator for an injury caused by an inherent risk of skiing. Unlike the Colorado statute, however, the Utah statute does not define and specifically limit the duties a ski area operator owes to its patrons. Moreover, while Colorado's legislation is designed to limit the liability of ski area operators, the purpose of the Utah Ski Safety Act is "to clarify the law, not to radically alter ski resort liability." *Clover v. Snowbird Ski Resort, supra,* 808 P.2d at 1045.

The slush, the trees, and the ravine, which were allegedly factors in plaintiff's injury, are all within Colorado's definition of "inherent dangers and risks of skiing," and the act expressly bars recovery for injuries resulting from such defined dangers and risks. Section 33–44–112.

We conclude that the trial court properly determined that plaintiff's injuries were caused by "inherent dangers and risks of skiing," as defined in the Ski Safety Act. We also agree with the trial court's conclusion that Vail therefore did not have a duty to warn its patrons of those inherent dangers. *See* §§ 33–44–106 through 33–44–108. Thus, the trial court properly concluded, as a matter of law, that plaintiff's claim was barred under the Ski Safety Act. *See* § 33–44–112; *see also Giebink v. Fischer, supra.*

### B.

Relying on § 33–44–107(2)(d), plaintiff contends that the alleged ravine was a dangerous area and that Vail was negligent because it failed to post a sign warning skiers of the danger.

■ As discussed above, § 33–44–107(2)(d) expressly provides that the term "danger area," as it relates to the sign requirement, does not include "areas presenting inherent dangers and risks of skiing." An area presenting variations in steepness or terrain, such as the drop-off or ravine at issue here, is thus not a "danger area" within the meaning of the statute requiring a particular type of warning sign. Accordingly, Vail cannot be

held liable for failing to post such a warning sign.

## C.

Finally, plaintiff argues that the trial court erred in concluding that plaintiff failed to ski within his abilities and that his injuries were caused by his own negligence.

In light of our conclusion that the trial court properly entered summary judgment in favor of Vail because plaintiff's injuries were caused by "inherent dangers and risks of skiing," we need not consider this contention.

## II.

Plaintiff next contends that the trial court erred in denying his motion to reconsider. We perceive no error.

In his motion to reconsider the order granting summary judgment, plaintiff identified a number of purported issues of material fact and argued for the first time that, because the ravine was visually obscured, Vail was required to post warning signs. In support of his motion, plaintiff submitted, also for the first time, affidavits and written statements of several individuals who had witnessed the accident.

Plaintiff's motion to reconsider the summary judgment determination must be characterized as a motion for new trial under C.R.C.P. 59(d)(4). *See Bowlen v. Federal Deposit Insurance Corp.*, 815 P.2d 1013 (Colo.App.1991). The primary purpose of a motion for a new trial is to give the trial court an opportunity to correct any errors it may have made. *See* C.R.C.P. 59; *In re Marriage of Jones*, 668 P.2d 980 (Colo.App. 1983).

In response to the motion for summary judgment, plaintiff submitted only his own affidavit, in which he merely reiterated the facts alleged in the complaint and concluded that, in his opinion, the ravine was not an inherent danger or risk of skiing, but instead a dangerous area which should have been marked as such. In his motion to reconsider, plaintiff asserted for the first time a contention that the ravine was visually obscured.

Most of the affidavits were also first filed with that motion.

Affidavits filed after the granting of a motion for summary judgment cannot be considered in a motion to reconsider, *see Conrad v. Imatani*, 724 P.2d 89 (Colo.App. 1986), and a court need not entertain new theories on a motion to reconsider following the grant of summary judgment. *Bowlen v. Federal Deposit Insurance Corp., supra.*

Moreover, plaintiff neither asserted nor established that the factual information contained in the later filed affidavits was not known by or available to him until after the court entered its order granting summary judgment. *See* C.R.C.P. 59(a)(4); *Mountainwood Condominium Homeowners Ass'n v. Cal–Colorado*, 765 P.2d 1066 (Colo.App. 1988).

Accordingly, the trial court properly refused to consider the issues raised in the affidavits and did not abuse its discretion in denying plaintiff's motion to reconsider. *See Bowlen v. Federal Deposit Insurance Corp., supra; Conrad v. Imatani, supra; DuBois v. Myers*, 684 P.2d 940 (Colo.App.1984).

## III.

We also disagree with plaintiff's contention that the court erred in awarding Vail its costs incurred after making an offer of settlement under § 13–17–202, C.R.S. (1987 Repl. Vol. 6A).

Section 13–17–202(1)(a)(II) provides as follows:

> If the defendant makes an offer of settlement which is rejected by the plaintiff and the defendant does not recover a final judgment in excess of the amount offered, then the defendant shall be awarded actual costs accruing after the offer of settlement to be paid by the plaintiff.

The provisions of the statute are mandatory. *Centric–Jones Co. v. Hufnagel*, 848 P.2d 942 (Colo.1993). Thus, a trial court does not have discretion "to refuse to award actual costs due to a party under the statute." *Scholz v. Metropolitan Pathologists, P.C.*, 851 P.2d 901, 910 (Colo.1993).

317

Plaintiff claims that the purpose of § 13–17–202(1)(a)(II) is to promote and encourage settlement and that Vail's one dollar offer "abused the spirit of the statute" because it did not approximate an amount plaintiff might reasonably have expected to recover for his injuries. Thus, he urges, Vail's offer was made in bad faith and should not give rise to an award of costs pursuant to the statute.

The legislative declaration in the act containing § 13–17–202 indicates that the act was:

> designed to make the legal system more effective and efficient by discouraging the filing of unnecessary litigation, by encouraging settlement, and by encouraging more timely resolution of disputes.... In enacting these changes, the intent of the general assembly is to improve the legal system and reduce the high cost to individual citizens and to society caused by protracted and fruitless litigation....

Colo.Sess.Laws 1990, ch. 100 at 848. Thus, § 13–17–202 is designed not only to encourage settlement but also to discourage unnecessary litigation and reduce the attendant costs.

Under the circumstances here, Vail's offer of settlement was permissible and within the purpose of the statute. The trial court therefore properly awarded Vail costs pursuant to § 13–17–202.

The judgment is affirmed.

METZGER and JONES, JJ., concur.