**Robert P. BORQUEZ, Plaintiff–Appellee and Cross–Appellant,**

v.

**ROBERT C. OZER, P.C. d/b/a Ozer and Mullen, P.C. and Robert C. Ozer, individually, Defendants–Appellants and Cross–Appellees.**

No. 93CA1805.

Colorado Court of Appeals, Div. I.

Nov. 9, 1995.

Rehearing Denied Dec. 7, 1995.

Certiorari Granted Sept. 16, 1996.

Roger Moore, Denver, Lance E. Isaac, Denver (On the Opening Brief); Collins & Pringle, Dwight L. Pringle, Denver, Robert P. Borquez, Denver, for Plaintiff–Appellee and Cross–Appellant.

Ozer, Sokolow & Ruppert, P.C., Renee C. Ozer, Denver, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge TAUBMAN.

In this action for wrongful discharge based on sexual orientation and invasion of privacy, defendants, Robert C. Ozer, P.C., d/b/a Ozer and Mullen, P.C. (the Ozer law firm) and Robert C. Ozer (Ozer), individually, appeal from the judgment entered upon a jury verdict against them and in favor of plaintiff, Robert Borquez. Borquez cross-appeals from the trial court judgment against him denying his request for attorney fees and costs. As to the issues raised on appeal, we affirm the judgment; as to the issues raised on cross-appeal, we reverse the judgment and remand for further proceedings.

The events surrounding this dispute and presented to the jury indicated the following. Borquez was discharged from his position as an associate with the Ozer law firm within a week after his disclosure to Ozer that he was gay, that his companion was in the hospital, and that his companion had just been diagnosed with Acquired Immune Deficiency Syndrome (AIDS).

Borquez was hired by the Ozer law firm as an associate in May 1990. He did not disclose his sexual orientation to Ozer or to

anyone else at the firm. Also, because he was concerned about Ozer's acknowledged dislike of homosexuals, he kept his personal life confidential.

Borquez was well-respected, liked, and performed capably as an attorney with the firm. He was awarded three merit raises in his salary, including one just eleven days before he was fired.

On February 19, 1992, Borquez learned for the first time that his companion had been diagnosed with AIDS. Upset by that news and having been advised by his physician that he should be tested immediately for AIDS, Borquez concluded that he could not represent a client effectively in a deposition that afternoon, nor could he participate in an arbitration hearing the following day.

In an effort to locate another attorney to handle the deposition and the hearing, Borquez discussed the matter with Ozer and disclosed facts about his personal life including his sexual orientation, his homosexual relationship, and his need for immediate AIDS testing. Borquez asked Ozer to keep this information confidential, but Ozer made no reply. However, Ozer agreed to handle the deposition and hearing.

Shortly thereafter, Ozer told his wife, who is another shareholder in the firm, and others of Borquez' disclosures. Within two days, all employees and shareholders in the firm had learned about Borquez' personal life and his need for AIDS testing.

Two days later, Ozer met with Borquez and told him that he had not agreed to keep the disclosures confidential. Ozer also made derogatory comments about people with AIDS.

Five days later, on February 26, Ozer fired Borquez. The reason for the firing was a significant disputed issue at trial, with defendants maintaining that it had been for economic reasons. Those economic reasons stemmed from a pending bankruptcy which had been filed by the Ozer law firm in August 1991.

Indeed, on February 17, 1992, two days before Borquez' disclosure, Ozer had met with his bankruptcy attorney and, according to Ozer, had then decided that, in order to cut costs, Borquez and another lawyer would be laid off. According to Ozer, Borquez was scheduled to be laid off during the month of February. Following Borquez' disclosures, the shareholders of the firm discussed whether to follow through with their plan to discharge Borquez, recognizing that such discharge might result in litigation against the law firm. According to defendants' evidence, faced with the need to pare costs because of the pending bankruptcy, the shareholders decided to follow through with their plan to discharge Borquez.

Borquez then brought this action against defendants, raising *inter alia,* the two claims at issue here. First, Borquez alleged that his dismissal violated the anti-discrimination provisions of Denver Revised Municipal Code § 28–93(a)(1) (1991) (Denver Ordinance) which, among other things, provides that it shall be a discriminatory practice to discharge an individual based upon sexual orientation.

Second, Borquez alleged that his dismissal violated § 24–34–402.5(1), C.R.S. (1995 Cum. Supp.), which provides, subject to certain exceptions not applicable here, that it shall be a discriminatory or unfair employment practice for an employer to terminate the employment of any employee because of that employee's engaging in any lawful activity off the premises of the employer during non-working hours. That statute further provides that its provisions may be enforced by a civil suit for damages brought in any district court of competent jurisdiction. Section 24–34–402.5(2)(a), C.R.S. (1995 Cum.Supp.)

Concerned about the uncertain state of the law in this area, the trial court persuaded the parties to litigate the issue of whether Borquez would not have been dismissed but for his sexual orientation and to postpone consideration of the other legal issues that had been raised. Accordingly, the trial court fashioned its own jury instructions, one dealing with discriminatory discharge and corresponding damages for lost wages, and another concerning invasion of privacy, including damages for embarrassment and humiliation. Still another instruction concerned punitive damages.

Based upon these instructions, the jury returned a verdict in favor of Borquez, awarding him $30,841 for lost wages on the wrongful discharge claim, $20,000 for embarrassment and humiliation on the invasion of privacy claim, and $40,000 as exemplary damages. Subsequently, the trial court denied Borquez' requests for costs and attorney fees. This appeal and cross-appeal followed.

## I. Basis for Wrongful Discharge Claim

First, defendants contend that the judgment in favor of Borquez for wrongful discharge must be set aside because there is no implied private cause of action under the Denver Ordinance. Because we conclude that the wrongful discharge judgment is supportable as a violation of § 24–34–402.5(1), we need not decide whether there is an implied private cause of action for wrongful discharge under the Denver Ordinance.

It is undisputed that the claim for wrongful discharge presented to the jury was based upon a violation of either the statute or the Denver Ordinance. Defendants do not dispute that a private right of action exists under the statute. In addition, the parties agreed to try Borquez' wrongful discharge claims based upon the statute and the Denver Ordinance as a single claim to determine whether he was discharged because of his sexual orientation. Accordingly, by agreement of the parties, the jury was not instructed separately with respect to § 24–34–402.5(1) and the Denver Ordinance.

In our view, defendants waived the argument that the jury verdict was based solely upon the Denver Ordinance, and not upon § 24–34–402.5, when they agreed to try these two claims together to the jury. Furthermore, the evidence presented at trial supports the conclusion that plaintiffs presented sufficient evidence from which the jury could conclude that the defendants had violated § 24–34–402.5 by discharging Borquez for lawful conduct in which he engaged during his off-work hours.

Next, we reject defendants' assertion that the jury verdict was based upon Borquez' *status* as a homosexual, rather than upon his conduct and, therefore, that there was no lawful *activity* in which Borquez was engaged during his off-work hours that could have been the basis for his discharge. The jury was presented with evidence that Ozer particularly objected to Borquez' sexual relationship during his off-work hours.

Specifically, in response to questioning regarding his views of homosexuals, Ozer testified that: "I think there are people who conduct themselves properly and there are people who conduct themselves in ways that I, at least, view as improper." Further, contrary to defendants' argument that the verdict was based upon Borquez' status, Ozer testified: "I understood that [Borquez] was a homosexual man who had been engaged in a sexual relationship with a person diagnosed [with] AIDS. That's what I understood." Thus, that evidence supports the conclusion that defendants discharged Borquez based upon lawful conduct or activity in which he engaged during his off-work hours in violation of § 24–34–402.5.

Accordingly, we affirm the wrongful discharge judgment as supportable based upon a violation of § 24–34–402.5(1).

## II. Invasion of Privacy Claim

### A. Applicability of Colorado Workers' Compensation Act

As a threshold matter, defendants assert that, because the Colorado Workers' Compensation Act, § 8–40–101, et seq., C.R.S. (1994 Cum.Supp.) provides the exclusive remedy for compensation for an employee for a work-related injury, Borquez' claim for invasion of privacy is barred by the Act. We decline to address this contention.

Issues not properly preserved at trial cannot serve as a basis for appellate review of a judgment. In the absence of unusual circumstances, issues presented in the pleadings but not presented at trial will not serve as a basis of appellate review. *Minto v. Lambert,* 870 P.2d 572 (Colo.App. 1993). To preserve an issue for appeal, a party must make a timely objection which is specific enough to provide the trial court with a meaningful opportunity to correct the error. *See Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579 (Colo.1984).

Here, although defendants raised the affirmative defense of the exclusivity of the Workers' Compensation Act for work-related injuries in their amended answer and trial disclosure certificate, they did not make any argument concerning that defense at the outset of trial, during the trial, or in their post-trial motion. Therefore, since the issue was not presented to the trial court for a ruling, it is not properly before us now. *Minto v. Lambert, supra.*

## B. Invasion of Privacy

■ Defendants also contend that, because Colorado has not formally recognized the tort of invasion of privacy in the form of "unreasonable publicity given to the life of another," no cause of action exists for such a claim. Again, we disagree.

Colorado has generally recognized the tort of invasion of privacy, but has not specifically recognized the tort of "unreasonable publicity given to the private life of another." *See Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (1970) (recognizing the right to privacy as a theory of tortious conduct but declining to define or categorize all invasions that may constitute a violation of that right); *People v. Home Insurance Co.,* 197 Colo. 260, 591 P.2d 1036 (1979) (generally acknowledging four forms of the tort of invasion of privacy, but declining formally to recognize or define the scope of such claims).

Although no Colorado court has specifically recognized an invasion of privacy action for unreasonable publicity given to the private life of another, as outlined in Restatement of Torts (Second) § 652D (1976), more than 30 jurisdictions have done so. *See, e.g., State Board of Dentistry v. Kandarian,* 268 Mont. 408, 886 P.2d 954 (1994); *Hill v. National Collegiate Athletic Ass'n,* 7 Cal.4th 1, 26 Cal.Rptr.2d 834, 865 P.2d 633 (1994); *Childs v. Williams,* 825 S.W.2d 4 (Mo.App. 1992); *Miller v. Motorola, Inc.,* 202 Ill. App.3d 976, 148 Ill.Dec. 303, 560 N.E.2d 900 (1990); *Zinda v. Louisiana Pacific Corp.,* 149 Wis.2d 913, 440 N.W.2d 548 (1989).

We conclude that Restatement § 652D provides sufficient authority for resolution of the issues before us. *See Grease Monkey International, Inc. v. Montoya,* 904 P.2d 468

(fn. 2) (Colo.1995) ("A court may apply sections of the restatements as a formulation of the law that is applicable to the issue which is before the court.").

## C.

Restatement (Second) of Torts § 652D (1976) provides:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.

■ Critical to this particular claim of invasion of privacy is that the disclosure concerns the "private" life of the plaintiff and that it would be highly offensive to a reasonable person. Restatement (Second) of Torts § 652D comment b (1976) further explains that:

> Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are . . . disgraceful or humiliating illnesses.

Here, the information regarding Borquez' sexual conduct and, in particular, his exposure to the HIV virus, clearly constitutes a "private" matter as defined by the Restatement. Courts in other jurisdictions have recognized similar claims. *See Doe v. Southeastern Pennsylvania Transportation Authority,* No. CIV. A. 93–5988, 1995 WL 334290 (E.D.Pa. June 2, 1995) (employer's chief administrative officer breached the employee's right to privacy by disclosing that employee was being treated for HIV/AIDS); *Doe v. Borough of Barrington,* 729 F.Supp. 376, 385 (D.N.J.1990) ("The right to privacy in this information extends to members of the AIDS patient's immediate family."); *Woods v. White,* 689 F.Supp. 874 (W.D.Wis. 1988) (prison officials who disclosed that plaintiff inmate had tested positive for AIDS violated inmate's constitutional right to pri-

vacy); *see also Doe v. Methodist Hospital,* 639 N.E.2d 683 (Ind.App.1994) (recognizing that disclosure of HIV status gives rise to an action for invasion of privacy); *Multimedia WMAZ, Inc. v. Kubach,* 212 Ga.App. 707, 443 S.E.2d 491 (1994) (same); *Hillman v. Columbia County,* 164 Wis.2d 376, 474 N.W.2d 913 (App.1991) (disclosure of inmate's HIV status to jail inmates and employees gave rise to an action for invasion of privacy).

Further, as both courts and commentators have noted, the disclosure of this information would be highly objectionable to a reasonable person because a strong stigma still attaches to both homosexuality and AIDS. *See Doe v. Borough of Barrington, supra,* at 385 ("Revealing that one's family or household member has AIDS causes the entire family to be ostracized."); *Estate of Behringer v. Medical Center,* 249 N.J.Super. 597, 592 A.2d 1251 (1991) (discussing the stigma associated with AIDS); *Urbaniak v. Newton,* 226 Cal.App.3d 1128, 277 Cal.Rptr. 354 (Cal.1991) (holding that HIV positive status is clearly a private fact, the disclosure of which may be offensive and objectionable to a reasonable person of ordinary sensibilities); *see also* Colorado Bar Ass'n, *Colorado AIDS Law: Your Legal Rights* 24 (1995) ("The stigma that surrounds AIDS or any HIV-related diagnosis increases the desire of persons ... to protect their medical records and confidences."); Salbu, *HIV Home Testing and the FDA: The Case for Regulatory Restraints,* 46 Hastings L.J. 403, 430 (1995) ("Both AIDS and HIV-positive status have been a source of social stigma ever since the AIDS virus was identified ... [This stigma] results from [its] high incidence among socially marginalized groups, particularly gay men and intravenous drug users."); J. Souza, *Doe v. Town of Plymouth and Officer Paul Tibbetts: When is the Disclosure of HIV Status Beyond the Call of Duty?,* 29 New Eng.L.Rev. 391 (1995) (discussing the stigma attached to AIDS as the basis for the need for confidentiality). *Cf. Hayes v. Smith,* 832 P.2d 1022 (Colo.App. 1991) (false allegation that teacher was homosexual was not slander per se).

In addition, the information disclosed was not a matter of legitimate concern to the public. The facts about Borquez' health and private life were inherently private, as discussed above. Also, public health reports and records relating to individuals diagnosed with AIDS, HIV-related illness, or HIV infection are "strictly confidential information" and may be disclosed only under narrowly specified circumstances. *See* § 25-4-1404(1), C.R.S. (1995 Cum.Supp.); *see also Multimedia WMAZ, Inc. v. Kubach, supra,* 443 S.E.2d at 495 ("Unlike the identities of those involved in crimes, the identities of those suffering from AIDS are generally not a matter of public interest...."). The information concerning Borquez' health and possible HIV infection was therefore not of legitimate public concern.

We also note that our General Assembly has declared that "having AIDS or the HIV infection, being presumed to have the HIV infection, or seeking testing for the presence of such infection should not serve as a basis for discriminatory actions...." Section 25-4-1402, C.R.S. (1995 Cum.Supp.).

Thus, we conclude that Borquez had a privacy interest in the dissemination of information in this case.

### D.

However, for there to be a supportable claim under Restatement § 652D, there must also be "publicity" of the private facts. According to the Restatement, publicity occurs when a matter is communicated to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. *See* Restatement (Second) of Torts § 652D comment a (1976).

In the present case, the trial court combined various parts of the Restatement to formulate its jury instruction for invasion of privacy. Specifically, it elected to use the term "publication," which is more commonly associated with the tort of defamation and necessitates only communication to a third party. *See* Restatement (Second) of Torts § 577 (1976).

Some courts, however, have recognized the need for flexibility in the application of the Restatement's theory to permit recovery for particularly egregious conduct. These courts

have held the general rule not applicable to a claim of invasion of privacy where a special relationship exists between the plaintiff and the "public" to whom the information is disclosed. *See Miller v. Motorola, supra* (special relationship exists between an employee, whose supervisor disclosed information about her mastectomy, and her fellow employees); *Beaumont v. Brown,* 401 Mich. 80, 257 N.W.2d 522 (1977) (special relationship exists between the Army Reserve office and a reservist who was the subject of a derogatory letter from his employer); *see also McSurely v. McClellan,* 753 F.2d 88 (D.C.Cir.1985) (indicating that the size of the audience is irrelevant and the publicity requirement may be satisfied by proof of disclosure to a very limited number of people when a special relationship exists).

■ Communication to the general public has not been required by some courts because disclosure to those persons with whom the plaintiff has a special relationship may be just as devastating as disclosure to many. In *Beaumont v. Brown, supra,* 401 Mich. at 104–05, 257 N.W.2d at 531, the court explained:

Communication of embarrassing facts about an individual to a public not concerned with that individual and with whom the individual is not concerned obviously is not a serious interference with plaintiff's right to privacy, although it might be 'unnecessary' or 'unreasonable.' An invasion of a plaintiff's right to privacy is important if it exposes private facts to a public whose knowledge of those facts would be embarrassing to the plaintiff. Such a public might be the general public if the person were a public figure, or a particular public such as fellow employees, club members, church members, family, or neighbors if the person were not a public figure.

Accordingly, we hold that it is appropriate to recognize the tort of invasion of privacy in the form of unreasonable publicity given to the private life of another in the circumstances of this case where private information was unreasonably disseminated to fellow employees who had no legitimate interest therein. *See Grease Monkey International, Inc. v. Montoya, supra* (a provision of the Restatement may set forth the appropriate analytical framework when it does not conflict with existing Colorado case law).

## E.

■ Defendants, however, contend that even if we recognize a tort for invasion of privacy, the jury instructions here were erroneous as a matter of law. They assert that it was error to use the lower threshold of "published" rather than the Restatement requirement of "publicity." We disagree.

The trial court gave the following instruction to the jury:

In order for the plaintiff to recover from the defendants on his claim for invasion of privacy, you must find by a preponderance of the evidence that:

1. The defendants published;

2. A matter concerning plaintiff's private life; and

3. Publication of the matter would be highly offensive or humiliating to a reasonable person; and

4. The matter is not of legitimate concern to the public; and

5. The plaintiff was injured as a result of the publication.

The jury was also instructed that: "A statement is 'published' when it is communicated orally to and is understood by some person other than the plaintiff."

Here, Borquez' companion's medical condition and Borquez' at-risk status were disclosed to all employees of the firm, including shareholders, associates, and support staff. Borquez' coworkers are a "public" with whom he has a special relationship and to whom disclosure of his sexual orientation and possible HIV infection could prove particularly embarrassing.

While it would have been clearer for the trial court to have followed the Restatement language and given a separate instruction regarding special relationship, we conclude, as noted above, that the trial court's instructions were tantamount to an instruction based on the special relationship test, and thus, any error was harmless.

Moreover, the Restatement itself notes that other forms of the tort of invasion of privacy may be established and that nothing in the Restatement is intended to exclude the possibility of future developments in the tort law of the right of privacy. *See* Restatement (Second) of Torts § 652A comment c (1976); *see also Rugg v. McCarty, supra* (refusing to characterize all invasions that might constitute a violation of the right to privacy).

We therefore conclude that, under the circumstances presented here, the jury instructions, taken as a whole, adequately advised the jury of the tort of invasion of privacy based on unreasonable publicity given to the life of another and that any deficiency in such instructions was not reversible error.

### F. Sufficiency of the Evidence

Defendants next assert that, even if a claim of invasion of privacy exists, there was not sufficient evidence in this case to support a verdict in favor of Borquez on that claim. We do not agree.

A reviewing court must view the evidence in a light most favorable to the party seeking to sustain the judgment and, if there is any evidentiary basis for the verdict, it may not be disturbed on review. *Frontier Exploration v. American National Fire Insurance Co.*, 849 P.2d 887 (Colo.App.1992).

Ozer asserts that whatever information was disseminated about Borquez' sexual orientation and HIV status was authorized by consent or qualified privilege. In effect, Ozer contends that Borquez "waived" his right to bring this action for public disclosure of private facts by telling Ozer about his personal situation.

The protection afforded an individual's right to privacy may be waived "to whatever degree and in whatever connection a man's life has ceased to be private." *Cabaniss v. Hipsley*, 114 Ga.App. 367, 372, 151 S.E.2d 496, 502 (1966). However, the scope of the waiver is related to and limited by the actions on which the waiver is based. *Multimedia WMAZ, Inc. v. Kubach, supra.* More specifically: "[The right of privacy] may be waived for one purpose and still asserted for another; it may be waived in

behalf of one class and retained as against another class." *Pavesich v. New England Life Insurance Co.*, 122 Ga. 190, 199, 50 S.E. 68, 72 (1905).

Here, it is undisputed that Borquez informed Ozer of his circumstances *only* because he felt that it was necessary in relation to his responsibilities at work. Additionally, the record reveals that Borquez went to great measures to keep his sexual orientation private and, upon disclosure to Ozer, expressly requested the information be kept confidential. Although Ozer did not promise to keep this personal information about Borquez private, evidence was presented to the jury indicating that Borquez did not consent to further disclosure regarding his sexual orientation.

Thus, Borquez expressly limited the scope of his waiver to Ozer and Ozer's subsequent disclosures went beyond the scope specified by Borquez, in terms of both audience and purpose. *See Multimedia WMAZ, Inc. v. Kubach, supra.* Hence, we reject defendants' contention that by informing Ozer, Borquez waived his right to privacy and made the facts of his personal life and medical condition public as a matter of law.

Further, the jury was instructed that defendants had a qualified privilege to communicate information regarding Borquez' sexual orientation to "officers and employees relating to the status and conduct of an employee and that information was of common interest to them for health and professional reasons." The jury was also instructed that the privilege did not protect the defendants if they abused it by, *inter alia*, communicating such information "primarily for purposes other than the protection of the interest for which the privilege was given."

Although the shareholders of the law firm had a qualified privilege to discuss information regarding Borquez' sexual orientation among themselves, particularly in light of their asserted recent decision to discharge him because of the pending bankruptcy, there was evidence presented to the jury that defendants abused that privilege by communicating the information to others at the firm who did not have a legitimate reason to learn

this information. Accordingly, the jury was properly instructed regarding defendant's affirmative defense of privilege and, based upon conflicting evidence, rejected it.

Viewing the evidence in the light most favorable to the jury verdict, we conclude that there was sufficient evidence to support it.

### G. Damages for Embarrassment and Humiliation

Defendants next assert that Borquez' damages for embarrassment and humiliation on his invasion of privacy claim were precluded by an earlier order entered by the trial court. We are not persuaded.

The presentation of evidence and order of proof rest within the sound discretion of the trial court. *See Ficor, Inc. v. McHugh,* 639 P.2d 385 (Colo.1982). Further, the matter of permitting a witness to be recalled is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *Schaefer v. Gildea,* 3 Colo. 15 (1876). Also, the form and style of instructions rest within the sound discretion of the trial court. *Fieger v. East National Bank,* 710 P.2d 1134 (Colo.App.1985).

Pursuant to C.R.C.P. 35(a), when the mental or physical condition of a party is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician. However, a plaintiff's general allegations of mental suffering, mental anguish, emotional distress, and the like do not place his or her mental condition in controversy under this rule. *Tyler v. District Court,* 193 Colo. 31, 561 P.2d 1260 (1977).

Here, because Borquez' complaint contained a claim for mental distress, defendants moved for an independent medical examination of Borquez pursuant to C.R.C.P. 35(a). Borquez responded that he did not intend to make his mental state a matter of genuine controversy, that he did not intend to call a psychiatric expert witness at trial, and that he did not intend to present any medical evidence of his mental suffering. Accordingly, the trial court entered an order denying defendant's C.R.C.P. 35(a) motion and pre-

cluding any claim or testimony based upon mental distress.

At trial, after Borquez testified during his case-in-chief, he was recalled to testify regarding embarrassment and humiliation he had experienced as a result of defendants' dissemination of information concerning his sexual orientation and his companion's diagnosis with AIDS. Defendants objected, arguing that Borquez' testimony about embarrassment and humiliation went to his claim of mental distress which had been precluded by the trial court's earlier order.

We perceive no abuse of discretion by the trial court in allowing Borquez to testify as to the embarrassment and humiliation that he suffered. Because Borquez' mental condition was not in controversy the trial court properly denied defendant's motion for an independent medical examination. *See Tyler v. District Court, supra.* For the same reasons, the trial court acted within its discretion in allowing Borquez to testify about embarrassment and humiliation. *See also Robyn v. Phillips Petroleum Co.,* 774 F.Supp. 587 (D.Colo.1991) (under Colorado law, elements of damage for invasion of privacy claim include embarrassment and humiliation, separate from mental anguish and mental suffering); *Rugg v. McCarty, supra* (claim for invasion of privacy may be asserted when unreasonable action foreseeably results in extreme mental anguish, embarrassment, humiliation, or mental suffering).

### III. Exemplary Damages

Defendants next challenge the award of exemplary damages in favor of Borquez on two grounds. We reject these contentions.

### A. Exemplary Damages and the Denver Ordinance

First, defendants contend that because all of the exemplary damages awarded to Borquez may have been based upon a finding by the jury of conduct relating only to the Denver Ordinance violation, the entire award of exemplary damages must be set aside. We are not persuaded.

Because defendants agreed that plaintiffs' claims under the statute and the Denver

Ordinance could be presented as a single wrongful discharge claim to the jury, we conclude that they waived this argument.

■ Second, defendants further maintain that the award of exemplary damages must be set aside because the verdict on the wrongful discharge claim was not based upon "a wrong done to the person." We disagree.

Section 13–21–102(1)(a), C.R.S. (1987 Repl. Vol. 6A) provides, in pertinent part, that exemplary damages may be awarded under certain circumstances "in all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property...."

Here, the jury was instructed that it could award exemplary damages based upon its finding in favor of Borquez on either the wrongful discharge claim or the invasion of privacy claim. Because there is no dispute that the invasion of privacy claim was "for a wrong done to the person," exemplary damages were appropriately awarded under § 13–21–102(1)(a). *See Diaz v. Oakland Tribune,* 139 Cal.App.3d 118, 188 Cal.Rptr. 762 (1983) (although judgment for plaintiff in invasion of privacy case reversed because of instructional error, jury acted within its discretion in awarding punitive damages).

### B. Jury Instructions on Exemplary Damages

■ Second, defendants contend that because the trial court erroneously instructed the jury, the judgment for punitive damages exceeds the limitations provided by § 13–21–102, C.R.S. (1987 Repl.Vol. 6A). We disagree.

Section 13–21–102(1)(a) provides that in all civil actions in which damages are assessed by a jury for a wrong done to a person for willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award the party reasonable exemplary damages not to exceed an amount equal to the actual damages awarded to the injured party. Based upon the language "not to exceed an amount equal to the actual damages awarded," defendants argue for the first time on appeal that, pursuant to § 13–21–102, any award of punitive damages must

be allocated to each claim for which it was assigned to determine whether the award exceeds the limitations provided by that statute.

In regard to punitive damages, the trial court instructed the jury that it could assess punitive damages against defendants for willful and wanton conduct applicable to Borquez' claim for lost wages or to his claim for invasion of privacy or to both. Although defendants made several objections to the form of the proposed jury instructions, they made no objection to the instruction on exemplary damages. Thus, this issue also was not properly preserved at trial and, therefore, cannot serve as a basis for reversal of the judgment.

### IV.  Effect of *Evans v. Romer*

Defendants next contend that Borquez' claims pursuant to Denver Revised Municipal Code § 28–93 are barred by Colo. Const. art. II, § 30b, commonly referred to as Amendment 2. Because of our disposition in Part I, we need not address this contention.

In any event, we note that defendants concede that the supreme court's decision in *Evans v. Romer,* 882 P.2d 1335 (Colo.1994), *cert. granted,* — U.S. —, 115 S.Ct. 1092, 130 L.Ed.2d 1061 (1995) holding Amendment 2 unconstitutional is binding upon this court.

### V.  Attorney Fees

■ On cross-appeal, Borquez contends that the trial court erred in denying his request for attorney fees. We agree.

Section 24–34–402.5(2)(b), C.R.S. (1995 Cum.Supp.) provides that the "court shall award the prevailing party in such action court costs and a reasonable attorney fee." The action referred to in this section is one based upon violation of § 24–34–402.5(1), C.R.S. (1995 Cum.Supp.) which, as noted, makes it an unfair employment practice for an employer to terminate the employment of any employee because of that employee's engaging in any lawful activity off the premises of the employer during non-working hours, subject to certain exceptions not applicable here.

To be a prevailing party for the purpose of an award of attorney fees pursuant to a statute, a party must have succeeded upon a significant issue presented by the litigation and must have achieved some of the benefits that he or she sought in the lawsuit. *In re Marriage of Watters,* 782 P.2d 1220 (Colo. App.1989) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d. 40 (1983)). *Cf. Dennis I. Spencer Contractor, Inc. v. City of Aurora,* 884 P.2d 326 (Colo. 1994) (if a claim exists for a violation of a contractual obligation, the party in whose favor the decision or verdict on liability is rendered is the prevailing party for purposes of awarding attorney fees).

In denying Borquez' application for attorney fees, the trial court ruled: "This action was not entertained under the statute cited." Thus, because the trial court apparently concluded that the case was litigated only under the Denver Ordinance, which does not provide for an award of attorney fees, the trial court denied Borquez' application for attorney fees.

Borquez contends that the trial court erred in this ruling and that he is a prevailing party under § 24–34–402.5. We agree with this contention.

We have already concluded that the jury verdict on the wrongful discharge claim is supportable based upon a violation of § 24–34–402.5, C.R.S. (1995 Cum.Supp.). The record does not support the trial court's conclusion that the wrongful discharge claim was not litigated, at least in part, based upon a claim of violation of this statute. And, there is no question that Borquez has succeeded upon a significant issue presented by this litigation and has achieved some of the benefits that he sought in the lawsuit. Accordingly, we conclude that Borquez is a prevailing party under § 24–34–402.5.

Inasmuch as Borquez' claim was premised, in part, on the statute, the fact that the jury's verdict was not specifically based thereon does not preclude an award of attorney fees. *Cf. Hewitt v. Helms,* 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) (despite absence of ruling on merits, a prevailing party in a settlement agreement may be entitled to an award of attorney fees under 42 U.S.C. § 1988).

Thus, we conclude that the trial court erred in stating that this case was tried only under the ordinance. Accordingly, Borquez, as the prevailing party, is entitled to an award of reasonable attorney fees, and the matter must be remanded to the trial court to make such determination.

## VI. Costs

Finally, Borquez contends on cross-appeal that the trial court erred by not awarding costs incurred by him after the jury returned a verdict which exceeded the amount set forth in his offer of settlement pursuant to § 13–17–202(1)(a)(I), C.R.S. (1995 Cum.Supp.). On the other hand, defendants contend that, since Borquez submitted his bill of costs after the time required by C.R.C.P. 121 § 1–22(1), he is not entitled to an award of costs. We agree with Borquez' contention.

Here, prior to trial on March 13, 1993, Borquez made an offer of settlement, pursuant to § 13–17–202, in the amount of $75,000. Defendants rejected the offer, and the case proceeded to trial resulting in a jury verdict of $90,841 and a judgment entered upon that verdict on July 16, 1993. Accordingly, on August 18, 1993, Borquez submitted a bill of costs in the amount of $9,112.09, but failed to distinguish between costs incurred before and after the offer of settlement. However, on September 8, 1993, he supplemented his request for an award of costs by providing the court with a revised bill which itemized his costs. On September 17, 1993, the trial court awarded Borquez only $130 in costs.

Under C.R.C.P. 121 § 1–22(1), "[a] party claiming costs shall file à [b]ill of [c]osts within 15 days of the entry of the order or judgment, *or within such greater time as the court may allow....*" (emphasis added) Here, Borquez submitted his bill of costs and an amended bill of costs after the expiration of the deadline provided by C.R.C.P. 121 § 1–22(1). Nevertheless, the trial court considered them and awarded Borquez $130 as part of his costs.

Subsequently, the trial court denied Borquez' motion for reconsideration of costs, concluding that his original motion inadequately differentiated between pre-offer and post-offer costs and was inadequate to identify reasonable costs.

Because Borquez' bill of costs was considered by the trial court, even though it was filed more than fifteen days after entry of judgment, we conclude that it was filed timely pursuant to C.R.C.P. 121 § 1–22(1). Thus, his bill of costs was filed within "such greater time as the court may allow." *See Koontz v. Rosener,* 787 P.2d 192 (Colo.App.1989) (parties cost bill and request for fees was timely, even though filed more than 15 days after entry of judgment, where the bill was received and considered on its merits).

Thus, the question is whether Borquez was entitled to an award of costs as set forth in his bill of costs. Section 13–17–202(1)(a)(I) provides that: "[I]f the plaintiff makes an offer of settlement which is rejected by the defendant and the plaintiff recovers a final judgment in excess of the amount offered, then the plaintiff *shall be awarded actual costs accruing after the offer of settlement* to be paid by the defendant." (emphasis added)

The provisions of § 13–17–202, C.R.S. (1987 Repl.Vol. 6A) are mandatory. *Graven v. Vail Associates, Inc.,* 888 P.2d 310 (Colo.App.1994). Also, although a trial court does not have discretion to refuse to award "actual costs" to a party under the statute, the determination of the amount of such costs reasonably incurred rests within the discretion of the trial court. *Scholz v. Metropolitan Pathologists, P.C.,* 851 P.2d 901 (Colo.1993).

Here, Borquez' amended, itemized bill of costs was filed before the trial court ruled on his original bill of costs. Under these circumstances, we conclude that, since it considered his original bill of costs as timely filed, the trial court was required pursuant to § 13–17–202(1)(a)(I) to award Borquez reasonable costs incurred after the offer of settlement. Accordingly, upon remand, the trial court is directed to reconsider its award of costs and to award post-offer costs that were reasonably incurred by Borquez.

Thus, the portion of the judgment denying attorney fees and costs is reversed, and the cause is remanded with directions for reconsideration of those issues. In all other respects, the judgment is affirmed.

METZGER, J., concurs.

PLANK, J., concurs in part and dissents in part.

Judge PLANK concurring in part and dissenting in part.

I respectfully dissent as to that portion of the majority opinion determining that there was no reversible error occasioned by the jury instructions on the invasion of privacy claim.

I concur with the majority that we should recognize the tort of invasion of privacy in the form of "unreasonable publicity given to the life of another." However, I believe the instructions submitted to the jury were erroneous and require reversal of the judgment as to that claim for relief.

Here, the trial court modified the language of Restatement (Second) of Torts § 652D (1976). That Restatement section provides: "One who gives *publicity....*" But, the trial court did not use or define publicity; instead, it drafted an instruction using *"published"* as an element. This application of the Restatement was improper. "Publicity" requires a broader dissemination than mere "publication."

Accordingly, I would reverse the judgment on this claim and remand the cause for a new trial with properly drafted instructions.